HOPE T. WILLIAMS *vs.* CLARENCE A. SMITH.

JUNE 11, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Depositions in Perpetual Memory.  Notice to Persons Interested.*

Although depositions in perpetual memory cannot be used against persons who have not been notified that they were to be taken, persons duly notified cannot take advantage of the lack of notice to others, as the objection is a personal one and available only to the person affected thereby.

The presence of a person at the taking of depositions in perpetual memory and the offering of the depositions thereafter by him in evidence are a waiver of any defect from lack of notice to him.

(2)  *Depositions.  Manner of Taking.*

Where it appears from the certificate of the magistrate that deponent signed the transcribed reproduction of the shorthand writing to which her deposition had been reduced by the magistrate, there is no necessity that it should appear that deponent signed the deposition so taken in shorthand. Neither is it necessary that the reproduction of the deposition reduced to writing stenographically, shall be sworn to by the person stenographically reporting the same, when that person is the officer before whom the same is taken.

(3)  *Depositions.  Evidence.*

In the absence of extrinsic evidence of the physical and mental capacity of deponent at the time of giving her deposition, the court properly permitted it to be read to the jury, as testimony for them to weigh under suitable instructions.

(4)  *Depositions.*

Where defendant was present when deponent testified, and might have remained had he desired until transcript was prepared, and there is no claim that the transcript of such deposition is incomplete or imperfect, the fact that such transcript was signed in his absence, is immaterial.

(5) *Depositions.  Admissibility.*

The admissibility of a deposition does not depend upon its supporting the issues in a case; if it has tendency to support the same or is relevant thereto, it is sufficient.

(6) *Evidence.*

A trial court has discretion in permitting the repetition of a question or in permitting a witness in redirect to testify as to some matter overlooked in direct examination.

A question which does not suggest the desired answer is not leading.

(7) *Action of Money had and received to recover Money obtained by Fraud.*

Plaintiff claiming that defendant filled out orders payable to himself upon certain banks where she had deposits, and also a power of attorney for the transfer of certain stock, and converted to his own use the money so received, brought an action for money had and received, alleging in her declaration that defendant did fraudulently embezzle the same, and setting out the making of a complaint against said defendant for the crime of embezzlement before a proper magistrate, etc.

*Held,* that an action for money had and received will lie whenever one has money in his hands belonging to another which in equity and good conscience he ought to pay over, or where money has been obtained by oppression, extortion, or by fraud or embezzlement.

*Held, further,* that the charge of embezzlement was merely as inducement to the averment that complaint had been duly made and process issued thereon as then required by Gen. Laws, cap. 233, sec. 16 and that there was no misjoinder of counts in contract and tort in the declaration.

ASSUMPSIT for money had and received.  Heard on exceptions of defendant, and overrruled.

DUBOIS, C. J.  This is an action of assumpsit for money had and received, brought by the plaintiff, now deceased, who was the great aunt of the defendant, for money received by him in May 1902, when she was nearly ninety years of age and sick in bed in his house.  The circumstances surrounding the transaction were as follows:  at that time the plaintiff had on deposit, in the Mechanics Savings Bank, $1,010.50; in the Peoples Savings Bank, $1,219.42; and in the Providence Institution for Savings, $585.80; and she was the owner of five shares of the capital stock of the National Exchange Bank.  The defendant filled out orders, payable to himself, upon the three banks aforesaid, and a power of attorney for the transfer of said stock to him, and the plaintiff signed the same.  The

defendant then withdrew the foregoing deposits from the banks and sold the stock for $540, receiving in all the sum of $3,355.72.

The plaintiff, claiming that the defendant converted to his own use the money so received for her, brought this suit wherein her declaration reads as follows:

"Hope T. Williams, of the city of Providence, in said county, who sues by James N. Smith, of said Providence, as guardian of her person and estate, complains of Clarence A. Smith, of the town of Johnston, in said county, whose property has been attached and who has been summoned by the sheriff in an action of the case:—

"For that the defendant on, to wit, the 16th day of May, A. D. 1902, at said Johnston, to wit, at said Providence, was indebted to the plaintiff in the sum of $3,370.72, for so much money by the defendant before that time had and received to and for the use and benefit of the plaintiff, and being so indebted, the defendant, in consideration thereof, thereafterwards, to wit, on the same day, at said Johnston, to wit, at said Providence, undertook, and then and there promised the plaintiff, to pay her said sum of money upon request.

"And the plaintiff avers that said defendant, at said Johnston, on, to wit, the 16th day of May, A. D. 1902, with force and arms, did fraudulently embezzle and convert to his own use, and take and secrete with intent to fraudulently embezzle and appropriate to his own use, and with intent to cheat and defraud said plaintiff, said sum of $3,370.72, in lawful money of the United States of the value of $3,370.72, the same being the property of said plaintiff, the said defendant then and there being the agent, clerk and servant of said plaintiff, said sum of money then and there coming into his possession and under his care and charge by virtue of such employment, against the statute and the peace and dignity of the state; and that on the 2d day of January, A. D. 1907, a complaint, under oath, was made in Cranston, in said county, by James N. Smith, for said crime of embezzlement to a proper magistrate, namely, Henry A. Palmer, Esq., Justice of the District Court of the Eighth Judicial District of Rhode Island, and thereupon, on the same day, a warrant for

said crime was issued at said Cranston by said Justice against said defendant. . . .

"And also for that the defendant, on the day of the date of the plaintiff's writ, at said Johnston, to wit, at said Providence, was indebted to the plaintiff in the further sum of, to wit, $2,000.00, for so much money at that time due and payable from the defendant to the plaintiff for interest upon to wit, the sum of $3,370.72, before then had and received by the defendant to and for the use and benefit of the plaintiff, and by the plaintiff forborne to the defendant for divers long spaces of time before then elapsed, and for other money at that time then due and payable from the defendant to the plaintiff for interest thereon. And being so indebted, the defendant, in consideration thereof, to wit, on the day last aforesaid, undertook, and then and there promised the plaintiff, to pay her said sum of $2,000.00 on request.

"And the plaintiff avers that said defendant, at said Johnston, . ° on, to wit, the 16th day of May, A. D. 1902, with force and arms, did fraudulently embezzle and convert to his own use, and take and secrete with intent to fraudulently embezzle and appropriate to his own use, and with intent to cheat and defraud said plaintiff, said sum of $3,370.72, in lawful money of the United States of the value of $3,370.72, the same being the property of said plaintiff, the said defendant then and there being the agent, clerk and servant of said plaintiff, said sum of money then and there coming into his possession and under his care and charge by virtue of such employment; and that on the 2d day of January, A. D. 1907, a complaint, under oath, was made in Cranston, in said county, by James N. Smith, for said crime of embezzlement to a proper magistrate, namely, Henry A. Palmer, Esq., Justice of the District Court of the Eighth Judicial District of Rhode Island, and thereupon, on the same day, a warrant for said crime was issued at said Cranston by said Justice against said defendant.

"Yet, although thereunto duly requested, the defendant has hitherto refused, and still refuses, to pay to the plaintiff said sum of money, or any part thereof."

To this declaration the defendant, who claims that he paid

over to the plaintiff all the money received by him for her use, pleaded the general issue *non assumpsit,* and upon the issue thus presented the case was tried in the Superior Court before a jury, who returned the following verdict, with special findings:

"The jury find that the defendant did promise in manner and form as the plaintiff has in her declaration thereof complained against him, and assess damages for the plaintiff in the sum of $4,578.$\frac{36}{100}$

"And the jury further find specially: That Hope T. Williams did sign the orders produced by or referred to in testimony of the representatives of the Mechanic's Savings Bank, the Peoples Savings Bank, the Providence Institution for Savings and the power of attorney for transfer of stock of the National Exchange Bank which have been offered in evidence, or referred to in evidence, and did—deliver the same to Clarence A. Smith.

"And the jury further find specially: That if the said Hope T. Williams did sign the three orders and the power of attorney referred to in the first issue, she did not at the time know and understand what said orders and power of attorney were at the time she signed them.

"And the jury further find specially: That Clarence A. Smith, the defendant, did not pay over to Hope T. Williams the funds drawn by him from the Mechanic's Savings Bank, the Peoples Savings Bank, and the Providence Institution for Savings, and the money received from the sale of the stock of Hope T. Williams in the National Exchange Bank."

The questions submitted to the jury for special findings with the answers thereon, are as follows:

## "*Special Findings.*

"*First.* Did or not Hope T. Williams sign the order produced by or referred to in testimony of the representatives of the Mechanics Savings Bank, the Peoples Savings Bank, the Providence Institution for Savings and the power of attorney for transfer of stock of the National Exchange Bank which have been offered in evidence, or referred to in evidence, and deliver the same to Clarence A. Smith? Yes.

"*Second.* If the said Hope T. Williams did sign the three orders and the power of attorney referred to in the first issue, did she or not at the time know and understand what said orders and power of attorney were at the time she signed them?   No.

"*Third.* Did or not Clarence A. Smith, the defendant, pay over to Hope T. Williams the funds drawn by him from the Mechanics Savings Bank, the Peoples Savings Bank and the Providence Institution for Savings, and the money received from the sale of the stock of Hope T. Williams in the National Exchange Bank?   No."

Each question was answered definitely by the jury, and the ambiguity apparent in the second special finding attached to the verdict evidently arose from a clerical misunderstanding. The same may well be considered as if it read as follows: And the jury further find specially: That said Hope T. Williams did not know and understand what said orders and power of attorney were at the time she signed them.

After the rendition of the foregoing verdict, and after the defendant's motion for a new trial had been denied by the justice of the Superior Court who presided at the trial, the case came before this court upon the defendant's bill of exceptions and the plaintiff's petition to establish the truth of the same, under C. P. A. § 494.

The truth of the exceptions has been established, in the first place, by the correction of certain clerical errors contained in the defendant's motion to exclude from the consideration of the jury the deposition in perpetual memory of the plaintiff, which motion is contained in and forms a part of the bill of exceptions; and, secondly, by temporarily appending the said deposition—which was not transcribed by the court stenographer, although used at the trial of said case; but which had been duly recorded in the Superior Court under C. P. A. § 388—to the transcript of testimony, to be used as a part thereof during this consideration.

The bill of exceptions as allowed, corrected, and established reads as follows:

"The defendant in the above entitled case comes and files his bill of exceptions, and says that said cause was tried before

his Honor, Mr. Justice Baker, and a jury on April 30th, May 1, May 4, May 5 and May 6, A. D. 1908, and a verdict with special findings was rendered therein for the plaintiff in the sum of $4,578.36 and certain exceptions were then and there immediately taken by said defendant in the proceedings in said case to his Honor's rulings and directions as follows:

"1.   To certain rulings of said Justice at the trial of said action regarding or admitting certain evidence as shown on pages 4, 11, 12, 27, 28, 34, 36, 37, 35, 48, 49, 70, 71, 72, 73, 74, 77, 79, 81, 102, 142, 159, 166, 249 and 253 of the transcript of the testimony, etc., filed herewith.

"To the denial of the defendant's motion, that the pretended deposition of Hope T. Williams be rejected and excluded for the following reasons,

"Motion as follows,

"*First*,   Because the names of all persons known to be interested in the subject matter of the controversy for which the deposition was to be taken, to wit, the taking of the money of Hope T. Williams, were not mentioned or named in the petition or application to his Honor, Tanner J. for the appointment of a Notary Public or standing Master in Chancery to take said deposition, to wit, James N. Smith, guardian of the person and estate of said Hope T. Williams, was not named or mentioned therein.

"*Second*,   Because the pretended deposition of said Hope T. Williams is not relevant to or bearing upon, and has no reference to the subject matter of the controversy set forth in the application or petition to have a Notary Public or standing Master in Chancery appointed, to take said deposition, to wit, the taking of $3,315.72 by said Clarence A. Smith, the defendant, on or about the month of May 1902, or taking it at any other time, or the taking of any part of said sum of Hope T. Williams money.

"*Third*,   Because the said Hope T. Williams, being then and there under guardianship, both as to person and property, could not apply to or petition a Court or a Judge by herself or by attorney to have said deposition taken to be used in Court or otherwise, as appears in the application to his Honor Tanner

J. by her attorney, Irving Champlin, but the petition or application should have been made by her guardian, James N. Smith.

"*Fourth*, Because it appears by the certificate of the officer who took said pretended deposition attached thereto, that said deposition was taken, and reduced to short-hand writing by said officer in the presence of said deponent, and a transcript reproduction of said short-hand writing was on the 26th day of January read to and in the presence of said deponent, and said deponent thereupon subscribed her name to said deposition. And it does not appear by said certificate or otherwise that said deposition so taken in short-hand writing was ever transcribed into long-hand writing, type-writing, print or other reproduction, and said transcribed deposition, if any, was ever signed by said deponent, Hope T. Williams.

"And it does not appear by said certificate or otherwise that said deposition so taken in short-hand writing was ever signed by the deponent.

"It does not appear by the certificate or otherwise that the pretended signature of Hope T. Williams the deponent was attested by the officer taking the pretended deposition, as by Statute required.

"And it does not appear by said certificate or otherwise that said deposition was reduced into long-hand writing, type-writing, print or other reproduction, and said reproduction sworn to by the person or official stenographically reporting said deposition, and signed by the deponent as by Statute required.

"*Fifth*, Because said Hope T. Williams was unable both mentally and physically through old age and disease and senile dementia and loss of memory to give or make a valid deposition at the time that said pretended deposition was taken or made.

"*Sixth*, Because said pretended deposition is so indefinite, uncertain, and contradictory, it is' wholly invalid, and further, it has no bearing upon or reference to the present suit or the subject matter in controversy for which it was pretended to have been taken.

"*Seventh,* Because it, the deposition, is so mixed up with irrelevant interrogatories and answers thereto, and matters concerning other persons, and affairs having reference to and upon matters inadmissible in evidence under the petition, and the matters in controversy therein mentioned for the taking said deposition and not connected with or the taking said sum of money, or any part thereof, or the subject matter for which it was taken, it is wholly void.

"*Eighth,* Because the said pretended deposition was not taken and completed at the time and place designated in the notice.

"*Ninth,* Because the said pretended deposition does not support the issues in the case, or either of them, made by the pleadings.

"To the decision of said Court denying the defendant's motion for a new trial, which motion was based upon the following grounds:

"That the verdict is contrary to the evidence and the weight thereof submitted in said case.

"That the verdict is contrary to law.

"That the amount of damages awarded by the verdict is excessive.

"That said defendant has discovered new and material evidence in said case which he had not discovered at the time of the trial thereof, and which he could not with reasonable diligence have discovered at any time previous to the trial of said case, as by affidavits to be filed in Court will be fully set forth, said affidavits being made part of this petition.

"And the said defendant submits that all of said rulings are erroneous, and that said errors entitle him to a new trial or a judgment entered in his behalf.

"Wherefore the defendant tenders this his bill of exceptions, and prays that the same may be allowed by the Court in accordance with law."

The first exception, as appears by the transcript of testimony, arose in the manner following:

"MR. HARRIS: I offer in evidence the deposition of Hope T. Williams.

"MR. MOWRY: There is a motion made in regard to the admissibility of these depositions. (Reads motion.) Now, May the Court please, this affidavit—(Reads affidavit.)

"THE COURT: The Court will admit the deposition and you may note the exception.

"MR. MOWRY: When he offered it I objected and I filed a certain motion on the grounds of admissibility. I would ask to have those papers I have submitted to you on file in this case.

"THE COURT: I have no objection to his filing those.

"MR. MOWRY: I want an exception to each of these rulings on each of those different subjects.

"The COURT: The Court won't rule until the deposition is offered. If you want me to formally rule on that I will deny the motion. I will admit the deposition and deny the motion.

"MR. MOWRY: We will except to the denial of the motion and the admission of the deposition.

"MR. HARRIS: If your Honor please, we would like to withdraw the offer of the deposition at this time in order that the bank officials who are here might be relieved as soon as possible.

"MR. ANGELL: The deposition is offered and exception is noted and it is simply a delay in the reading.

"THE COURT: Merely a matter of convenience."

A proper consideration of the exception involves an examination of each ground of the foregoing motion to reject and exclude the said deposition.

(1) It is a sufficient answer to the first ground of objection to state that it appears in evidence, as shown by the transcript, that James N. Smith, the guardian of the plaintiff, although not individually named in the petition to take the deposition, was personally present at the taking of the deposition of his ward and made no objection thereto, and that afterwards, at the trial of the case, which occurred after the decease of Hope T. Williams, which case was prosecuted by him in his representative capacity as the executor of her will, he caused the deposition to be offered in evidence. His presence and his conduct were sufficient to remedy any defect from lack of notice to him, if any can be said to exist. Furthermore, although depositions in perpetual memory can not be used against persons

who have not been notified that the same were to be taken, persons who have been duly notified can not take advantage of the lack of notice to others for the purpose of suppressing the deposition against themselves. In other words, the objection is a personal one, and is available only to the person to be affected thereby.

The second ground is untenable. The deposition is admissible in evidence, and its probative value was a question for the jury.

The third objection is without merit. It appears that the plaintiff's guardian had properly employed an attorney for her, who brought the suit and made the application to the judge to have said deposition taken.

(2) The fourth objection states no valid reason for excluding the deposition. The certificate of the magistrate sufficiently sets forth a compliance with C. P. A. § 379. As it appears therefrom that the deponent signed the transcribed reproduction of the shorthand writing to which her deposition had been reduced by the magistrate, there is no necessity that it should appear that the deponent signed the deposition so taken in shorthand writing. It does appear that the signature of the deponent was duly attested by the magistrate. It is not necessary that the reproduction of the deposition, reduced to writing stenographically, shall be sworn to by the person stenographically reporting the same when that person is the officer before whom the same is taken. The official engagement of the notary public prescribed by Gen. Laws, cap. 25, § 5, has sufficient vitality to endure throughout the term for which he was appointed and even thirty days beyond, under sections 3 and 4 of said chapter 25, and see *Kelton* v. *Montaut,* 2 R. I. 151.

(3) The fifth objection is valueless. It was proper for the court, in the absence of extrinsic evidence relating to the physical and mental capacity of the plaintiff at the time of giving her deposition, to permit the same to be read to the jury as testimony for them to weigh under suitable instructions.

The sixth objection does not commend itself to us, as it has relation to the value of the testimony as evidence rather than to its admissibility.

The seventh objection is subject to the same criticism.

(4)   The eighth objection has no merit. The defendant was present when the deponent testified, and he could have remained and have been present when the deponent signed the transcript, on the same day, if he had desired so to do, and he does not claim that the transcript of the deposition so taken in his presence is incomplete or imperfect in any particular. The fact that the transcribed reproduction of the deposition was signed in the absence of the defendant is immaterial in the circumstances.

(5)   The ninth objection can not be sustained: The claim is too broad; the admissibility of the deposition does not depend upon its supporting the issues in the case. If it has tendency to support the same, or is relevant thereto, it is sufficient.

The defendant's first exception is therefore overruled.

The defendant's exceptions to the rulings of the court in admitting evidence as shown on pages 11, 12, 27, 28, 34, 35, 36, 48, and 49 must be overruled; they all relate to testimony tending to prove the signatures of Hope T. Williams, in order that standards of her genuine handwriting might be established for comparison with certain of her signatures then disputed by the defendant but which he afterwards testified were genuine. The testimony objected to was fully corroborated by the defendant.

The exception on page 70 must also be overruled. George G. Wood, cashier of the National Exchange Bank, testified that upon a transfer of stock for Hope T. Williams to Nicholas Shelden, signed by "Clarence A. Smith, Attorney for Hope T. Williams," his (Wood's) name appeared as a witness to said signature of the defendant; that he did not remember the incident, but had no doubt that the defendant signed that in his presence. The defendant afterwards fully corroborated the testimony of the witness.

The exception on page 71 is based upon an objection made to the following question asked Hope T. Williams, during the time of the taking of her deposition: "Q. 11. Do you remember whether you stopped paying him (the defendant) board at any time?   Ans. I never stopped paying board while I

was there." The ground of the objection is not stated, but as it appears in said deposition that the deponent had already testified that she had paid him her board all the time she was there it was a mere repetition of her previous testimony, and although it was of no importance, we can not say that the admission was injurious to the defendant. It was a matter clearly within the discretion of the court.

The exception on page 72 also relates to an objection, made at the time of the taking of said deposition, to the following question: "Q. 23. When did you say it was that this happened that you signed your name?" The objection was that the question had been answered. The question was evidently asked for the purpose of attempting to fix the time of the transaction, which had not been established, and the part of the answer in response to the question was: "I can't tell you just what time it was." The question was properly admitted, and the cause of the defendant was not injured by the answer.

The exceptions on page 73 also relate to objections to questions 33, 47, 54, and 55 in said deposition: "Q. 33. Did you have any talk with Clarence about your bank books? Ans. Yes, I asked him. He seemed to think that I knew better myself what became of the books, than he did. Q. 47. When you came back from Clarence's to live with Mrs. Mathewson, did you have any money with you.?" The objection to this question was that it had already been answered. It was clearly within the discretion of the court to permit the question to be asked. And "Q. 54. When you came back from Clarence's did he give you any money?" the objection was that the question was leading, and the question was not answered; and to "Q. 55. When you came from Clarence's back to Mrs. Mathewson's did Clarence give you any money?" the objection was renewed. "Ans. No, no; no, sir, he didn't." The question was not leading; a leading question is one which suggests the desired answer.

The exceptions on page 74 also relate to objections taken to questions 56, 63, 70, 71, and 226 in said deposition, as follows: "Q. 56. While you were at Clarence's boarding with him, the last time, do you remember of giving any money to anybody

except Clarence, for board?" objected to as leading. The question was susceptible of either an affirmative or negative answer, and it does not appear from the question which was desired. Furthermore, it was clearly within the discretion of the court to admit the same. "Q. 63. Were you sick when you signed your name? Ans. Come to think of it I had a fit of sickness." The objection was that the question had been answered. This was also within the discretion of the court. "Q. 70. What did his father, Nicholas, ever do for you?" Objected to as immaterial. "Q. 71. Did he have any claim against you for the rent of the tenement?" Objected to as leading. The objections are without merit. It was material to inquire whether Nicholas Smith had a claim against the plaintiff, because the defendant had asserted that the plaintiff had paid Nicholas Smith a large amount of money to settle her indebtedness to him. The second question is not leading: "Q. 226. Mrs. Williams, did you ever see those five shares of stock that you speak of?" Objected to as not proper in redirect. "Ans. No." The question is clearly admissible in the discretion of the court, taking into account the age and infirmity of the plaintiff. Furthermore, it is not unusual to permit a witness, even in redirect, to testify as to some matter overlooked in the direct examination.

The exception upon page 77 relates to an objection taken to a question asked of James N. Smith, formerly guardian of the plaintiff, and then and now executor of her will, as follows: "Q. 3. Did you at any time make a complaint to the justice or clerk of the court of the Eighth Judicial District?" Objected to. "Ans. Yes, sir." As this was followed by evidence showing that the complaint was made against the defendant, as set forth in the declaration, it was pertinent and material testimony.

The exception taken on page 79 was to the ruling of the court permitting the judge of the District Court of the Eighth Judicial District to examine a certain complaint and warrant issued by him and to testify that his signature appeared upon said warrant, upon the ground that the Superior Court would take judicial notice of the fact. There is no merit in the exception.

The exception on page 81 relates to the introduction in evidence of the complaint and warrant aforesaid against the defendant for the purpose of showing that criminal proceedings had been instituted against him before the commencement of the case at bar. The former case of the plaintiff against the defendant was nonsuited because such criminal complaint had not been made. See *Williams* v. *Smith*, 28 R. I. 125. The complaint and warrant were properly offered in evidence.

The exception taken on page 102 is to the ruling of the court permitting James N. Smith, the executor of the last will of the plaintiff, who was also her guardian up to the time of her death, to testify that the defendant, in the trial of the former case against him brought by the plaintiff, testified that the person whose name was upon the various papers was the Hope T. Williams who was the plaintiff in that case. There was no error in admitting the defendant's former testimony as to the fact in question.

The exception taken on page 142 relates to the ruling of the court sustaining the plaintiff's objection to the questions asked in cross-examination of James N. Smith, former guardian and executor of the will of the plaintiff, as to where the plaintiff was boarding on or about June 14, 1889, and July 1st, 1890. The court properly ruled that the times in question were too remote from the date of the event in controversy, to wit, May, 1902.

The exception taken on page 159 was to the ruling of the court permitting Mrs. Eva M. Leach, a sister of the defendant, to testify that the defendant instructed her what to do in relation to Mrs. Mathewson, or James N. Smith, when they were at the house of the defendant while the plaintiff was there: "When they come you keep around so not to give them a chance to talk privately." We find no error in such ruling. This related to a period between June 28th and September 1st, 1902, and was a statement proper for the jury to consider in connection with the other circumstances of the case.

The exceptions on page 166 relate to the rulings of the court in permitting James N. Smith to state that the defendant, in the former suit of the plaintiff against him, testified that from

May, 1902, to June, 1904, Hope T. Williams never went away
from the farm, and his father never went off the place. There
was no impropriety in admitting this testimony. The defendant
claimed in the former as well as in the present suit that Hope
T. Williams paid to his father the large sum of money that he
obtained from the banks for her in May, 1902; that his father
died August 28th, 1903, and that none of the money was found
among his effects after his death, although the defendant made
an examination. And James N. Smith testified that no money
or bank books were found among the plaintiff's furniture, trunks
and other things, which were examined by him when he re-
moved them from the house of the defendant in June, 1904.
The testimony was relevant.

The exception on page 249 relates to a ruling of the court
permitting the defendant to be asked, in cross-examination,
whether he examined the rooms or property or possessions of his
father after his death. The objection was to the materiality
of the question. The answer was: "The rooms were mine
before his death. The property was mine before his death."
He further testified: " Q. The rooms occupied by him? A.
He was boarding with me. Q. The rooms occupied by him,
did you examine those? A. Oh, of course. Q. Did you find
any money? A. No." We see no error in the ruling.

The exception on page 253 relates to a ruling of the court
permitting the question, "After that conveyance to you by
your father of the farm," (February, 1902) "What property
did he own, if you know?" A." I don't know." No harm
was done by such ruling.

The exceptions to the decision of the court denying the de-
fendant's motion for a new trial are not well founded.

The defendant claims that the verdict is against the law
because the plaintiff has misconceived her action; that it
should have been an action of trespass on the case, for a
tort, under Gen. Laws, cap. 233, § 16, which reads as fol-
lows: " Whenever any person shall suffer any injury to his
person, reputation, or estate, by reason of the commission
of any crime or offence, he may recover his damages for such
injury either in an action of trespass, or in an action of the

case, against the offender; but no such action, except as provided in the preceding two sections, shall be commenced for such injury until after complaint has been made to some proper magistrate for such crime or offence, and process issued thereon against the offender, excepting only those cases in which such actions may now be maintained at common law; and whenever any person shall be convicted of larceny, he shall be liable to the owner of the money or articles taken, for twice the value thereof, unless the same be restored, and for the value thereof in case of restoration,"—instead of an action of assumpsit; and that there is a variance between the declaration and the proof.

The verdict is not against the law, and there has been no misconception of her form of action on the part of the plaintiff.

The defendant does not suggest, and it is difficult to imagine, what form of action could be substituted for the present upon the same state of facts. "An action for money had and received is an equitable action, governed by equitable principles, and in it plaintiff waives all torts, trespasses, and damage. It may in general be maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other." 27 Cyc. 849 A. "Where one receives money from another for a particular purpose, and neglects or refuses to apply it to such purpose, it may be recovered in an action for money had and received." Id. 862, G. "An action for money had and received will lie where one has obtained money from another by oppression, imposition, extortion, or deceit; and the law implies a promise from such person to return it to the lawful owner, whose title to it cannot be annulled by the fraudulent or unjust dispossession." Id. 863, J. "An action for money had and received will lie for money obtained by fraud or embezzlement. In all such cases the law implies a promise to pay." *Fagnan* v. *Knox,* 66 N. Y. 532. "This count (for money had and received) is sustainable in some cases where *money* has been received *tortiously,* or even by the intervention of forgery, without any color of contract, or under pretence of a contract not performed by the defendant, although, in general, a party is not

at liberty to declare in an action in form *ex contractu,* where there has been no contract express or implied." I Chitty Pl. 14 Am. ed. *352. An action on the case for money had and received is clearly an exception to the general rule that assumpsit must be based upon a contract express or implied.

The .defendant further objects that the plaintiff has endeavored to join contract and tort in the same and different counts of the declaration. It is true that the plaintiff in her declaration charges the defendant with embezzlement of the money for which she has brought suit, but the charge is made merely as an inducement to the averment that complaint has been duly made and process issued thereon against the defendant as required by Gen. Laws, cap. 233, § 16. We see no impropriety in so doing. There is no variance apparent between the declaration and proof. The plaintiff charged the defendant with taking her money and with keeping the same. The defendant admits taking, but asserts that he has paid the money to the plaintiff. The burden of proving payment is upon the defendant. When the defendant admitted that he received the plaintiff's money her case was proved; even if it had not been fully proved before.

By their general verdict and special findings the jury do not find that the defendant procured the signing of the orders and power of attorney by the plaintiff for any fraudulent purpose or that he had any knowledge of her lack of understanding concerning the same.

The verdict in effect finds that the defendant has money belonging to the plaintiff which in equity and good conscience he ought to repay, with interest from the time of its conversion to his own use. If the defendant has kept the money of the plaintiff, he has had the use of the same, and he should be required to pay the legal rate of interest for such use during the time the money has been in his possession up to the time of the rendition of the verdict. Taking this view of the case, we can not say that the amount of damages awarded by the jury is excessive. Nor can we say that the verdict is against the evidence. We neither saw the witnesses nor heard them testify, and therefore can not say what we might have

done if we had been members of the jury who found the verdict in this case. But the verdict of the jury has been sustained by the judge who presided at the trial and who had the same opportunity and advantage that the jury had to observe the witnesses and to weigh their testimony. A verdict so supported should not be disturbed unless it is made to appear that the jury were governed by improper motives or that the judge erred in the performance of his duty. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292. As there is nothing in this case to indicate such error or impropriety· on the part of either judge or jury, we are of the opinion that the verdict ought not to be disturbed.

As no affidavits have been filed in support of the defendant's claim of newly discovered evidence, the same has not been considered.

The defendant's exceptions are therefore overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*James Harris and Irving Champlin*, for plaintiff.

*Marquis D. L. Mowry and Louis L. Angell*, for defendant.