HELEN LOWNEY *vs.* FLORENCE KNOTT.

FEBRUARY 21, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action of trover for the conversion of a diamond ring was tried on a plea of the general issue before a justice of the superior court sitting without a jury. On two occasions during the trial the defendant moved for permission to file a plea of the statute of limitations. Such motions were denied in each instance. After completion of the trial and while the case was being held for decision on the merits under the plea of the general issue, the trial justice filed a rescript stating that he would enter decision for the defendant if she filed a plea of the statute of limitations within a specified time, which she promptly did. Shortly thereafter he entered a decision for the defendant on the ground that plaintiff's cause of action was barred by that statute. The case is before us on the plaintiff's exceptions to such decision and to the ruling allowing the defendant to plead the statute of limitations at the time and in the manner above stated.

The facts are undisputed. It appears in evidence that plaintiff, presently Mrs. Helen Lowney, was the widow of Thomas C. Kernan, who died in 1944 leaving a will under which she was the only legatee. At that time his gold ring, containing a diamond approximately one carat in size set

in a platinum facing, was pledged with a certain lumber company as collateral for a loan. In 1945 plaintiff was in the insurance business and her brother William Allen was one of her employees. She redeemed the ring in November of that year and immediately brought it to her office where she directed William to put it in her safe, which he did. While carrying out that instruction William asked her if he could take the ring "for a while." Her answer was: "Yes, but the ring must come back to me, it must go to my son who is too young now to wear this diamond ring." For a number of years thereafter she believed that the ring was in the safe as she had never seen it on her brother's hand.

The evidence further discloses that on the same day plaintiff had brought the ring to her office for safekeeping William gave it to the defendant, a widow whom he expected to marry, with the understanding between them that at the proper time it would be made into an engagement ring. Nothing further occurred until June 29, 1951 when William, who was then seriously ill, said to plaintiff: "Helen, you will be looking for your ring and I let Mrs. Knott [the defendant] mind it for me; get in touch with her and she will give you your ring back." William died that same day. Shortly thereafter plaintiff by telephone asked defendant for the ring and did not receive a definite refusal. About a month later, that is, in July or early August 1951, she made a personal demand and at that time defendant definitely refused to return the ring, which had not been altered in any way after she received it from William in November 1945.

Upon the foregoing undisputed evidence the trial justice entered a decision for defendant. His view of the case, as appears from his rescript, was that plaintiff's cause of action for the conversion of the ring accrued in November 1945, when William gave the ring to defendant, and that therefore the action was barred by the statute of limitations. The writ in the case is dated March 25, 1952. The statute of

limitations in this state for trover is six years. General laws 1938, chapter 510, §3. See *Iavazzo* v. *Rhode Island Hospital Trust Co.*, 51 R. I. 459. The plaintiff contends that such decision was erroneous because in the circumstances of record the cause of action did not accrue until June 29, 1951, when she first learned that William had taken the ring from the safe and given it to defendant.

In our judgment the trial justice overlooked the determinative issue in the case. The record clearly shows that the case was tried solely on defendant's plea of the general issue, under which plea the only question before the court was whether William had converted the ring, and nothing more. An additional and more difficult question was injected into the case when the trial justice allowed defendant to file a plea of the statute of limitations at the time and in the manner previously described. After the filing of such plea he had two issues to decide: first, whether as a matter of fact there had been a conversion of the ring by William; and secondly, if there was such conversion, when the cause of action based upon that wrongful act actually accrued to plaintiff as a matter of law considering the type of bailment involved in this case. He decided the first issue, but failed to give due consideration to or he misconceived the second by assuming that the statute began to run at the time of the conversion in November 1945.

It is well established that a cause of action in trover does not accrue to the aggrieved party in all instances at the time of conversion. If there is a plea of the statute of limitations it becomes necessary to consider carefully the character of the bailment in question in order to ascertain when the cause of action accrued according to law. In determining such issue it is to be noted that there is a fundamental difference between a bailment upon definite terms, usually for a consideration, and a gratuitous bailment for an indefinite period terminable at the will of the bailor. The latter type, which is sometimes referred to as a *commodatum*, is

the kind of bailment involved in the instant case. It rests in trust and confidence and consists in the gratuitous loaning of personal property to be used by the bailee and returned in specie. 6 Am. Jur., Bailments, §11; Story on Bailments (9th ed.), p. 205.

It is generally held that in a bailment for an indefinite period, as in the case at bar, the cause of action accrues either upon demand by the bailor for the return of the bailed article and a refusal, or upon a conversion by the bailee to the knowledge, actual or constructive, of the bailor. Until a demand and refusal are made, or until such a conversion comes to the notice or knowledge of the bailor, the statute of limitations will not begin to run. *Slack* v. *Bryan,* 299 Ky. 132; *Bristow* v. *Taul,* 310 Ky. 82; *Goodwin* v. *Ray,* 108 Tenn. 614; *Reizenstein* v. *Marquardt,* 75 Iowa 294; *Shewmake* v. *Shifflett,* 205 Ark. 875; *Viers* v. *Webb,* 76 Mont. 38; *Woods* v. *Latta,* 35 Mont. 9; *Whitehead* v. *Gormley,* 116 Okla. 287. 6 Am. Jur., Bailments, §340, p. 436; 54 C.J.S., Limitations of Actions, §142, p. 69. See also extensive annotation upon the subject in 47 A.L.R. 178. Apparently the same rule is followed in England. *Wilkinson* v. *Verity,* L.R. 6 C.P. 206 (1870-1871); *In re Tidd,* 3 Ch. 154 (1893).

In a bailment for an indefinite term the time within which demand should be made in order to avoid the running of the statute of limitations depends upon the circumstances in each case. The weight of authority is that unless it appears otherwise the demand should be made within a reasonable time. This is a question to be determined from the facts in evidence respecting the intention of the parties. Applying by analogy the principles of the statute of limitations it is usually, but not always, held that a reasonable time within which to make demand is the period prescribed by that statute. *Norwood Trust Co.* v. *Twenty-Four Federal Street Corp.,* 295 Mass. 234; *Whitehurst* v. *Duffy,* 181 Va. 637; *Schupp* v. *Taendler,* 154 F.2d 849; *Wright* v. *Paine,* 62 Ala. 340; *Southward* v. *Foy,* 65 Nev. 694. In *Campbell*

v. *Whoriskey,* 170 Mass. 63, which is cited with approval in the *Norwood Trust Company* case, the plaintiff was permitted to recover money entrusted to the defendant for safekeeping for more than thirteen years before demand was made for its repayment.

Although there is no Rhode Island case directly in point, yet the foregoing principles of law governing the running of the statute of limitations in a bailment for an indefinite time were approved in *Margossian* v. *Zorabedian,* R. I., 129 A. 501. In that case Margossian's intestate, Asadoor Mardirosian, shortly before leaving Providence for Armenia in 1909, deposited $900 in a local bank and left the bankbook with Zorabedian for safekeeping on terms set out in a receipt signed by the latter. Margossian, who never returned to this country, died in Europe about 1918. In 1921 the administrator of his estate brought an action of the case in assumpsit for the $900 against Zorabedian, who pleaded the statute of limitations in bar of that action.

At the trial it clearly appeared that Margossian had never made any demand for the return of his money. Considering all the evidence of record, the court held: "The intention of the parties undoubtedly was that the defendant should hold the book for the benefit of Mardirosian for an indefinite time and until he made a demand for it." While the court in that case rested its decision on the provisions of G. L. 1923, chap. 334, sec. 6, now G. L. 1938, chap. 510, §6, which prevented the running of the statute of limitations against a person residing abroad, it nevertheless expressed its opinion as to the law that would govern in a bailment of the type under consideration in the absence of such a statute. From the language it employed in connection with its reference to the case of *Campbell* v. *Whoriskey, supra,* which it cited with approval, it is plain that since no demand had been made by Margossian for a return of the money, Zorabedian's defense of the statute of limitations would

have been held equally invalid under the law of the *Campbell* case.

In the instant case, which involves the same type of bailment as in the *Margossian* case, the unquestioned understanding between plaintiff and her brother in November 1945 was that William at most should hold the diamond ring for an indefinite period and until she made a demand for it, namely, at some undetermined time in the future when she would deem her son, to whom she intended to give the ring, old enough to wear it. Upon possessing himself of the ring William immediately and secretly betrayed the trust that his sister had reposed in him. Unbeknown to her, he gave the ring as a purported gift to defendant, who of course acquired no right, title or interest thereto as a result of such wrongful act. It was not until June 1951 that plaintiff first learned from her brother, only a few hours before his death, that he did not have the ring and that it was then in the possession of defendant.

In the absence of a demand by plaintiff upon her brother for the ring or of any knowledge, direct or constructive, by her of his improper conduct in the matter prior to the day of his death, it is our opinion that, according to the above-mentioned authorities which are plainly applicable in the circumstances of record, the cause of action accrued to her as a matter of law in June 1951 and not in November 1945, when William had secretly converted the ring to his own purposes. Since the present action was commenced by writ dated March 25, 1952, the trial justice was clearly wrong in deciding for the defendant on the ground that the plaintiff could not recover because the statute of limitations began to run against her in November 1945. This was a misconception of the law applicable to the type of bailment established by the undisputed evidence in the case.

For the reasons stated, the plaintiff's exceptions are sustained, and on March 5, 1956 the defendant may appear before this court to show cause, if any she has, why the case

should not be remitted to the superior court with direction to enter judgment for the plaintiff.

*Quinn & Quinn, Joseph R. Weisberger,* for plaintiff.

*Charles H. Drummey, Albert A. Nutini,* for defendant.