368 A.2d 1227.

ANTONETTA FUSCELLARO *et al. vs.* INDUSTRIAL NATIONAL CORPORATION.

FEBRUARY 11, 1977.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher and Doris, JJ.

Bevilacqua, C. J. This is an appeal from a judgment of the Superior Court dismissing an action to recover for checks cashed upon forged endorsements. The defendant's motion to dismiss was granted on the ground that the action is barred by the statute of limitations.

The plaintiffs were copayees with their father, George Fuscellaro, on six checks issued by the American Guaranty Corporation through its receiver, in complete satisfaction of any obligations thereto existing. The checks, totalling $13,762 and drawn on the Rhode Island Hospital Trust Company, were issued during the period between September 2, 1964, and June 14, 1967. The defendant bank cashed the checks and presented them for payment to the Rhode Island Hospital Trust Company. The last of the six checks was paid by the Rhode Island Hospital Trust Company to defendant bank on June 21, 1967.

The plaintiffs neither endorsed these checks nor received the proceeds. The defendant bank cashed the checks over forged endorsements. The plaintiffs allege that they did not become aware that the checks had been issued and that they were copayees until the completion of the probate of their father's estate, several years after his death in 1967. Prior to the completion of probate, plaintiffs were only aware that their father had owned a certain amount of securities in American Guaranty Corporation.

Upon learning of the checks and the subsequent forgery, plaintiffs commenced this action in Superior Court in August of 1974, 7 years after the date defendant bank cashed their checks. Their complaint included two counts for the same cause of action, one in conversion and one in money had and received. The defendant moved that the complaint be dismissed because the action was barred by the 6-year statute of limitations on civil actions. The trial justice granted defendant's motion and plaintiffs now appeal.

In their appeal plaintiffs claim that the trial justice erred in computing the 6-year statutory period of limitations from the dates the checks were cashed. They argue that a cause of action in conversion does not accrue until the date on which they gained knowledge of the payment and that a cause of action in money had and received does not accrue until a demand for proper payment is made. We conclude that the trial justice was correct in finding that plaintiffs' action was barred by the statute of limitations for civil actions.

The applicable statute of limitations on civil actions is found in G. L. 1956 (1969 Reenactment) §9-1-13 which reads: "Except as otherwise specially provided, all civil actions shall be commenced within six (6) years next after the cause of action shall accrue, and not after." Thus the question before the court is when does a cause of action accrue on payment of checks bearing a forged endorsement.

## I.

The plaintiffs contend that by allegedly cashing the checks upon forged endorsements and refusing to deliver to plaintiffs the amount of the checks, defendant bank has converted their property. Section 6A-3-419(1)(c) provides that a negotiable instrument is converted when "it is paid on a forged endorsement." However, §6A-3-419(1)(c) merely states that payment on a forged endorsement is conversion, without delineating the elements of the action. Thus, whether the cause is brought under §6A-3-419(1)(c) or the common law, we must look to our common law of conversion to discover the nature of the cause of action and when it accrues.

This court has stated that the gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession. *Iavazzo* v. *R. I. Hosp. Trust Co.*, 51 R.I. 459, 462, 155 A. 407,

408 (1931). In the *Iavazzo* case, where the plaintiff alleged that the defendant converted a bank book, we held that the conversion occurs on the date the defendant takes possession and exercises dominion inconsistent with the plaintiff's right. On this date the cause of action accrues and the statute of limitations begins to run. *Id.* at 462-63, 155 A. at 408. The statute runs from the time the cause of action first accrues notwithstanding the plaintiff's ignorance of the facts which constitute the cause of action. *Astle* v. *Card,* 52 R.I. 357, 361, 161 A. 126, 128 (1932).

However, plaintiffs argue that their cause of action did not accrue on the date the bank exercised dominion by cashing their checks. They point out that this court has never decided the precise issue of the accrual date of a payee's cause of action for conversion of a negotiable instrument. They quote our statement in *Lowney* v. *Knott,* 83 R.I. 505, 508, 120 A.2d 552, 554 (1956), that "* * * a cause of action in trover does not accrue to the aggrieved party in all instances at the time of conversion."

We do not believe that we are free to choose the date of accrual merely because the type of property converted differs from that involved in our previous cases; nor do we believe that our language in *Lowney* v. *Knott, supra,* lends support to such a proposition. In that case the plaintiff lent her brother a ring which he gave to the defendant without the plaintiff's knowledge. Our decision that the cause of action for conversion accrued upon demand and refusal was based upon the nature of the bailment, which was indefinite until demand. *Id.* at 508, 120 A.2d at 554. It is well-established that a demand and refusal are usually required before an action for conversion can be brought against the possessor of a chattel who has rightfully obtained possession from one not its owner. *Claflin* v. *Gurney,* 17 R.I. 185, 187, 20 A. 932, 933 (1890). Since the instant case does not involve such an original rightful pos-

session, the demand exception to the general rule that the cause of action accrues on the date of the wrongful exercise of dominion is not applicable.

The plaintiffs contend that fundamental justice and the evolution of jurisprudential policy require us to find that the cause of action accrues at the time of discovery. They argue that because of policy reasons, knowledge, either actual or acquired through reasonable diligence, has increasingly become the starting point for the running of the statute of limitations. They note our choice of the date of discovery of the injury as the date of accrual of a cause of action for medical malpractice in *Wilkinson* v. *Harrington,* 104 R.I. 224, 243 A.2d 745 (1968), where we said: "To require a man to seek a remedy before he knows of his rights, is palpably unjust." *Id.* at 238, 243 A.2d at 753. The plaintiffs reason that the rationale of *Wilkinson* applies by analogy to require a similar rule in the situation where a payee may be barred from bringing an action to recover for a forged endorsement before he or she learns of the existence of the check. We cannot agree.

Limitations on the time within which such actions may be brought afford parties needed protection against the necessity of defending against claims which, because of their antiquity, would place the defendant at a grave disadvantage. *Wilkinson* v. *Harrington, supra* at 236, 243 A. 2d at 752. "Indeed, in such circumstances, the quest for truth might elude even the wisest court." *Id.* at 236, 243 A.2d at 752.

Our adoption of a discovery rule for medical malpractice in the *Wilkinson* case was the result of a careful balancing of the public interest served by the statute of limitations and that served by an accrual date which protects the public from medical mistreatment which in a demonstrably large number of cases is not otherwise likely to become ascertainable until after the statutory period has run. *Id.* at

238, 243 A.2d at 753. Moreover, we considered the fact that as the number of cases in the developing area of medical malpractice has grown, the number of exceptions courts have engrafted on the rule that the statute runs from the date of the negligent act has grown proportionately. *Id.* at 233-34, 243 A.2d at 751. Such an evolution strongly suggests an almost generic difference, for purposes of the statute of limitations, between causes of action for medical malpractice and other causes of action for personal injury.

In the instant case, analysis of the underlying policies leads us to conclude that a payee's action for conversion of a check must be governed by the general rule that in the absence of fraud by those invoking the statute of limitations, a cause of action in conversion accrues at the time the defendant wrongfully exercises dominion, regardless of the plaintiff's ignorance. The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends. Our law of commercial paper has codified a public policy strongly favoring such finality. *See, e.g.,* §6A-4-406(4) (3-year limitation on drawer suits against drawee for forged check endorsement, without regard to drawer's care or lack of care in failing to discover the forgery). That a discovery date would mitigate against finality and certainty of obligation is amply illustrated by the facts of the instant case. The plaintiff-payees apparently could not discover the forgery until after their father died and the estate was probated.

In choosing the date of the wrongful exercise of dominion as the point from which the period of limitations runs, the law of conversion presumes that property owners know what and where their assets are, despite the fact that the presumption may work a hardship upon the property owner who fails to discover his or her ownership rights until after the period has run. *See Adrian* v. *American Sec. &*

*Trust Co.*, 211 A.2d 771 (D.C. Ct. App. 1965); *Gerber* v. *Manufacturers Hanover Trust Co.*, 64 Misc.2d 687, 315 N.Y.S.2d 601 (1970). *Cf. Astle* v. *Card, supra.* We fail to see why the limitation on an owner's action for conversion should be measured differently and with less predictability merely because the property involved is commercial paper, particularly when our commercial law places such great emphasis on certainty of liability.

## II.

The plaintiffs also contend that under general banking theory a cause of action in money had and received, based on a collecting bank's implied contract to hold the proceeds of the check for the true owner until demand, accrues to the payee-owner at the time he or she discovers the forgery and demands payment from the collecting bank. We do not agree.

We have said that a suit for money had and received is in the nature of an equitable action and is maintainable whenever one person has money which in equity and good conscience belongs to another. *Williams* v. *Smith*, 29 R.I. 562, 578, 72 A. 1093, 1101 (1909). In *Williams*, the defendant was required to pay the plaintiff interest from the time he came into possession of the money belonging to the plaintiff, not from the time the plaintiff demanded the money. *Id.* at 579, 72 A. at 1101.

The Court of Appeals of New York considered the nature of a payee's action in money had and received against a collecting bank for cashing a check on a forged endorsement in *Henderson* v. *Lincoln Rochester Trust Co.*, 303 N.Y. 27, 100 N.E.2d 117 (1951). The court said:

> "The moment the collecting bank receives the proceeds it holds money belonging to the owner of the check and becomes a debtor of such owner and of no one else in the absence of a valid indorsement." *Id.* at 33, 100 N.E.2d at 120.

In *Forman* v. *First Nat'l Bank*, 66 Misc.2d 433, 320 N.Y.S. 2d 648 (1971), the court held that the *Henderson* case is authority for the position that such an action must be commenced within 6 years after the wrongful payment, under a 6-year statute of limitations for civil actions.

We conclude that a payee's cause of action for cashing a check upon a forged endorsement accrues at the time the check is cashed. The trial justice was correct in finding that the plaintiffs' action was barred by the statute of limitations.

The plaintiffs' appeal is denied and dismissed; and the judgment appealed from is affirmed.

Mr. Justice Paolino did not participate.

*Armando O. Monaco, II,* for plaintiffs.

*Hinckley, Allen, Salisbury & Parsons, Michael DeFanti,* for defendant.