NO. 4-96-0211

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

HADDAD'S OF ILLINOIS, INC., an Illinois  )   Appeal from

Corporation,                             )   Circuit Court of

          Plaintiff-Appellant,           )   Sangamon County

          v.                             )   No. 93L323

CREDIT UNION 1 CREDIT UNION, an Illinois )

Chartered Financial Institution,         )   Honorable

          Defendant-Appellee.            )   Jeanne E. Scott,

                                         )   Judge Presiding.

_________________________________________________________________

          JUSTICE KNECHT delivered the opinion of the court:

          Plaintiff, Haddad's of Illinois, Inc., filed a conver-

sion action against defendant, Credit Union 1 Credit Union, al-

leging, Raja Raychouni, an employee of plaintiff forged endorse-

ments on checks payable to plaintiff and defendant deposited them

into the account Raychouni opened with defendant.  Defendant

filed a motion for summary judgment, alleging plaintiff's cause

of action was barred by the applicable statute of limitations and

plaintiff did not have standing to sue defendant because it had

no interest in the allegedly converted checks.  The trial court

granted defendant's motion, finding plaintiff's action barred by

the statute of limitations.  Plaintiff appeals.  We affirm.

          Plaintiff is a wholly owned subsidiary of the CATS Com-

pany (CATS), a Michigan corporation.  CATS supplies computer

equipment and supplies to its customers.  In 1987, CATS contract-

ed with the State of Illinois (State) to supply computer equip-

ment and services to various state agencies.  At that time CATS

opened an office in Springfield in order to service the various

state agencies.  

          Plaintiff incorporated in Illinois in 1989.  On Decem-

ber 6, 1989, the board of directors of CATS executed a "Consent

Resolution" making plaintiff a "joint owner" of any check payable

to CATS regarding business operations in the State.  Pursuant to

the resolution, CATS gave plaintiff the right to "accept, en-

dorse, deposit, and otherwise make use of" any check tendered for

services performed by either plaintiff or CATS in connection with

business in the State.

          Under the terms of the State's contract with CATS, all

payments were to be sent to CATS' office in Michigan.  In addi-

tion, the invoices sent by CATS to the State gave the same in-

structions.  Neither CATS nor plaintiff conducted any banking in

Illinois and neither opened an account at any bank or credit

union within the State.

          On March 7, 1988, CATS hired Raychouni as branch man-

ager of its Springfield office.  Raychouni served in that capaci-

ty until July 2, 1990.  Raychouni received purchase orders from

the State and forwarded them to CATS in Michigan.  CATS would

then ship the products to its Springfield office for delivery.  

          During the period of time between March 1988, and May

1990, the State mailed checks in payment for its orders from CATS

to its Springfield office instead of sending the payments to

Michigan.  Raychouni failed to forward the checks to CATS' home

office and apparently forged the endorsement of CATS on the

checks and deposited them into his personal account with defen-

dant.    

          Jacques Haddad, president of CATS, was aware of every

purchase made by the State.  Albert Haddad, vice president of

CATS, was in charge of making sure CATS got paid for products it

sold.  He checked to make sure invoices were paid and he knew if

they were not paid.  As early as October 1988, he knew there were

invoices to the State for which CATS had not received payment.

          Raychouni maintained banking accounts with defendant. 

Plaintiff contends on July 3, 1990, Raychouni admitted to Jacques

he had deposited a $14,000 check issued by the State and payable

to CATS into an account with defendant.  Plaintiff's complaint

alleges this happened a number of times during Raychouni's em-

ployment.

          Plaintiff contends Raychouni continued to deposit

checks into his account with defendant until May 1991, based upon

the transaction stamp on the back of three of the checks.  The

checks were issued by the State in April and May 1990, but the

stamp on the back of each is blurry and could read either 1990 or

1991.  Albert stated in discovery, however, he believed Raychouni

left the United States in 1990.  

          The three checks show they were deposited into account

No. 425671.  Defendant's records for that account show deposits

in the same amounts as the subject checks were made in May 1990. 

Further, account No. 425671 was closed in August 1990 due to a

negative balance and was cleared from defendant's books in Decem-

ber 1990, with no activity of any kind after that date.

          On June 24, 1993, plaintiff sued defendant for conver-

sion of the checks it paid over the endorsements allegedly forged

by Raychouni.  Defendant moved for summary judgment on alterna-

tive grounds.  First, defendant argued plaintiff cannot sue for

conversion because it was not the payee on the checks and had no

standing to sue for conversion.  Second, defendant argued plain-

tiff's action is barred by the three-year statute of limitations

for conversion actions set forth in section 3-118(g) of the Uni-

form Commercial Code--Negotiable Instruments (Code) (810 ILCS

5/3-118(g) (West 1994)).  The trial court granted summary judg-

ment on the basis the three-year statute of limitations was ap-

plicable and the discovery rule does not apply to toll the stat-

ute. 

          Plaintiff argues, first, the trial court applied the

incorrect statute of limitations.  Section 3-420(a) of the Code

provides the law applicable to conversion of personal property

applies to conversion of negotiable instruments.  810 ILCS 5/3-

420(a) (West 1994).  The law applicable to personal property

provides causes of action for conversion shall be commenced with-

in five years after the cause of action accrued.  735 ILCS 5/13-

205 (West 1994).  Therefore, plaintiff argues five years is the

proper statute of limitations for actions for conversion of nego-

tiable instruments.

          However, the Code provides specifically in section 3-

118(g) three years is the statute of limitations for actions for

conversion of a negotiable instrument.  Where two statutes of

limitation arguably apply to the same cause of action, the one

which more specifically relates to the action must be applied. 

Calumet Country Club v. Roberts Environmental Control Corp., 136

Ill. App. 3d 610, 612, 483 N.E.2d 613, 615 (1985).  The proper

statute of limitations for actions for conversion of negotiable

instruments is three years as specifically set forth in the Code.

          Plaintiff argues even if the three-year statute of

limitations is correct, defendant's motion for summary judgment

should not have been granted because a question of fact exists

regarding whether its suit was filed in a timely manner.  It

contends either the cashing of the checks were part of an ongoing

plan constituting a single transaction for purposes of the com-

mencement of the statute of limitations or the discovery rule

should be applied to its action for conversion of a negotiable

instrument.   

          When a series of checks is cashed as part of an ongoing

scheme or plan, the plan constitutes a single transaction for

purposes of the commencement of the statute of limitations.  See 

Field v. First National Bank, 249 Ill. App. 3d 822, 825-26, 619

N.E.2d 1296, 1298-99 (1993).  Thus, if plaintiff alleged facts

sufficient to show a plan for Raychouni's conversion of checks

payable to CATS, the date on which the last check was deposited

would govern as the date for all the checks for purposes of the

statute of limitations.  

          However, in this case, contrary to plaintiff's asser-

tions, there is no question of fact as to the date on which the

last check was deposited with defendant by Raychouni.  Plaintiff

relies on the smudged stamp of the back of the last checks which

could be interpreted either as 1990 or 1991 and contends if they

were deposited in 1991, its cause of action was timely filed even

using the three-year statute of limitations, as the complaint was

filed on June 24, 1993.  The transaction stamp actually proves

nothing, however, as "a fact cannot be inferred when a contrary

fact could be inferred with equal certainty from the same evi-

dence."  Leavitt v. Farwell Tower Ltd. Partnership, 252 Ill. App.

3d 260, 268, 625 N.E.2d 48, 54 (1993).  Defendant's records indi-

cate the account into which the checks were deposited was closed

in December 1990, which would show the checks could not have been

deposited in May 1991.  Further, the checks were issued by the

State in April and May 1990.  These records are unrebutted by

plaintiff and show the date on which the checks were deposited.

The smudged transaction stamps are not sufficient to raise a

question of fact for the trial court to determine.

          Plaintiff argues, alternatively, the discovery rule

should have been applied to postpone the accrual of its cause of

action.  Under common law, a cause of action for conversion ac-

crued when a defendant exercised unauthorized control over the

plaintiff's property.  O'Connell v. Chicago Park District, 376

Ill. 550, 554, 34 N.E.2d 836, 839 (1941).  "The discovery rule

delays the commencement of the relevant statute of limitations

until the plaintiff knows or reasonably should know that he has

been injured and that his injury was wrongfully caused."  Jackson

Jordan, Inc. v. Leydig, Voit & Mayer, 158 Ill. 2d 240, 249, 633

N.E.2d 627, 630-31 (1994).  The effect of the rule is to make the

accrual of a plaintiff's cause of action the date on which he or

she reasonably should know of his or her injury.  

          The discovery rule has been applied to a number of

different tort causes of action in Illinois (see Jackson Jordan,

158 Ill. 2d 240, 633 N.E.2d 627 (legal malpractice); Witherell v.

Weimer, 85 Ill. 2d 146, 421 N.E.2d 869 (1981) (negligence and

product liability); Knox College v. Celotex Corp., 88 Ill. 2d

407, 430 N.E.2d 976 (1981) (fraud and tortious misrepresenta-

tion); Lipsey v. Michael Reese Hospital, 46 Ill. 2d 32, 262

N.E.2d 450 (1970) (medical malpractice)) but there appears to be

no authority on whether the discovery rule applies to a cause of

action for conversion of a negotiable instrument.  Consequently,

we must look to the decisions of those jurisdictions that have

addressed application of the discovery rule to actions for con-

version of negotiable instruments.

          A few courts in other jurisdictions have applied the

discovery rule to actions for conversion of negotiable instru-

ments.  See DeHart v. First Fidelity Bank, N.A./South Jersey, 67

B.R. 740, 745 (D.N.J. 1986); Stjernholm v. Life Insurance Co. of

North America, 782 P.2d 810, 811-12 (Colo. App. 1989); Branford

State Bank v. Hackney Tractor Co., 455 So. 2d 541, 542 (Fla. App.

1984) (per curiam).  However, the vast majority of authority runs

strongly against applying the discovery rule to an action for

conversion of negotiable instruments in the absence of fraudulent

concealment on the part of the defendant asserting the defense of

the statute of limitations.  See Menichini v. Grant, 995 F.2d

1224, 1231 (3d Cir. 1993); Kuwait Airways Corp. v. American Secu-

rity Bank, N.A., 890 F.2d 456, 461 (D.C. Cir. 1989); First Inves-

tors Corp. v. Citizens Bank, Inc., 757 F. Supp. 687, 690-92

(W.D.N.C. 1991); Husker News Co. v. Mahaska State Bank, 460

N.W.2d 476, 477-78 (Iowa 1990); Wang v. Farmers State Bank, 447

N.W.2d 516, 518-19 (S.D. 1989); Fuscellaro v. Industrial National

Corp., 117 R.I. 558, 562-64, 368 A.2d 1227, 1231 (1977); Palmer

Manufacturing & Supply, Inc. v. BancOhio National Bank, 93 Ohio

App. 3d 17, 22, 637 N.E.2d 386, 391 (1994); Lyco Acquisition 1984

Ltd. Partnership v. First National Bank, 860 S.W.2d 117, 119

(Tex. Ct. App. 1993); Insurance Co. of North America v. Manufac-

turers Bank, 127 Mich. App. 278, 283-84, 338 N.W.2d 214, 216

(1983); Continental Casualty Co. v. Huron Valley National Bank,

85 Mich. App. 319, 325, 271 N.W.2d 218, 221 (1978); Southwest

Bank & Trust Co. v. Bankers Commercial Life Ins. Co., 563 S.W.2d

329, 331-32 (Tex. Ct. App. 1978); Gerber v. Manufacturers Hanover

Trust Co., 64 Misc. 2d 687, 688-89, 315 N.Y.S.2d 601, 603 (1970);

4 W. Hawkland & L. Lawrence, Uniform Commercial Code Series §3-

419:10, at 983 (1994) (the cause of action should accrue when the

act of conversion occurred).

          Some of those courts which have applied the discovery

rule have done so on the basis of their state's policy of consis-

tently resolving conflicts between the rights of individuals to

obtain redress and interests involving the flow of commercial

transactions by favoring the rights of the individual. 

Stjernholm, 782 P.2d at 811.  Other courts have noted the reason

for the equitable discovery rule is to temper the harsh results

that sometimes occur under the policy of requiring disputes be

resolved within a reasonable time in order to allow a fair oppor-

tunity to defend.  DeHart, 67 B.R. at 743.

          Those courts declining to apply the discovery rule in

actions for conversion of negotiable instruments have considered

the rights of the individual, particularly the rights of unsus-

pecting victims of forgery, in comparison with the broader inter-

ests of the commercial world.

          "As tempting a choice as that may be in an

          individual case, however, we think the public 

          would be poorly served by a rule that effec- 

          tively shifts the responsibility for careful 

          bookkeeping away from those in the best position

          to monitor accounts and employees.  Strict ap-

          plication of the limitation period, while pre-

          dictably harsh in some cases, best serves the twin

          goals of swift resolution of controversies and 

          'certainty of liability' advanced by the [Code]."

          Husker News Co., 460 N.W.2d at 479. 

          Those courts declining to apply the discovery rule have

done so based on two grounds.  First, the commercial policies

underlying the Code require liability on negotiable instruments

not be open-ended.  

          "[T]he utility of negotiable instruments lies 

          in their ability to be readily accepted by 

          creditors as payment for indebtedness.  Checks

          must be transferable.  Consequently,  'in 

          structuring the law of checks we ... seek to

          enhance the negotiability of commercial paper

          so that it may play its role as a money substi-

          tute.'  Robert Hillman, et al., Common Law and 

          Equity Under the Uniform Commercial Code, [par.]       

          14.01[1] (1985).  Negotiability requires pre-

          dictable and rapid collection through payment 

          channels.

               Closely related to negotiability are commer-

          cial finality and certainty.  'The finality of 

          transactions promoted by an ascertainable defi-

          nite period of liability is essential to the 

          free negotiability of instruments on which 

          commercial welfare so heavily depends.'  

          Fuscellaro v. Industrial Nat'l Corp., 117 

          R.I. 558, 563, 368 A.2d 1227, 1231 (1977);

          [citation].

               *** 

               The Code drafters sought quick and inexpen-

          sive resolution of commercial disputes.  This          

          overarching goal is particularly important with 

          negotiable instruments where the exigencies of 

          commerce require inexpensive, quick, and reliable      

          transfer of funds."  Menichini, 995 F.2d at 1230- 

          31.

Second, as noted by the court in Husker News Co., the victim of

the conversion is in the best position to easily and quickly

detect the loss and take appropriate action.  Husker News Co.,

460 N.W.2d at 479.

          While not applying the discovery rule may be harsh in

certain cases, we find the reasoning of the majority of other ju-

risdictions considering the issue to be most persuasive.  The use

of negotiable instruments was intended to facilitate the rapid

flow of commerce.  This policy is best served by finding the

accrual of a cause of action for conversion of negotiable instru-

ments occurs when the instrument is negotiated.  The damage to

the plaintiff occurs at that moment and the applicable statute of

limitations then allows three years from that date to discover

the conversion in the ordinary course of bookkeeping.  Absent

fraudulent concealment on the part of the defendant, this should

allow ample time for a plaintiff to discover any injury.  There-

fore, we find the discovery rule does not apply to causes of

action for conversion of negotiable instruments.

          The judgment of the trial court is affirmed.

          Affirmed.   

          McCULLOUGH and GARMAN, JJ., concur.