**ISAAC TORRES, Plaintiff**

**v.**

**MIKE KALLOO d/b/a MIKE'S WRECKING SERVICE,
Defendant**

Civ. No. 732/1993

Territorial Court of the Virgin Islands

Div. of St. Croix

August 15, 1997

25

GEORGE W. CANNON, JR., ESQ., (Law Offices of George W. Cannon, Jr.), St. Croix, U.S.V.I., *for Plaintiff*

ESZART A. WYNTER, ESQ., (Law Office of Eszart A. Wynter. P.C.), Fredericksted, U.S.V.I., *for Defendant*

CABRET, *Judge*

## MEMORANDUM OPINION

In July 1993, plaintiff's car was burned while it was at defendant's premises for some body repair work. Defendant denies

responsibility for plaintiff's car being burned and denies he contracted with plaintiff to maintain the car at his premises. The Court must therefore determine (1) whether the parties entered into a bailment relationship with regards to the repair of plaintiff's car and if so, (2) whether defendant was negligent with regards to the care of plaintiff's vehicle while the vehicle was stored upon his premises. For the following reasons, the Court answers both questions in the negative and enters judgment in favor of defendant Mike Kalloo d/b/a Mike's Wrecking Services.

## STATEMENT OF FACTS

The defendant, Mike Kalloo, operates a business known as "Mike's Wrecking Service." Defendant's business license is for a wrecking service and the sale of used parts. The business is located at Plot #245, Estate Glynn, and is owned by Adam Kalloo and Kamla Kalloo. Defendant allowed a Mr. Eustace Gonzalez, more commonly known as "Muddy," to use a section of a shed located on defendant's property for the purpose of doing body work and paint jobs on cars. Defendant maintains that Muddy did not work for him. According to defendant, Muddy was solely responsible for getting his own work and would then pay him 30% of any profits made from each job in lieu of monthly rent payments.

In June of 1993, plaintiff met Muddy at Muddy's house and arranged to have some body work and a paint job done to his 1991 Mustang GT. Plaintiff testified that Muddy informed him that he was working at Mike's Wrecking Service and that he split the profit of all the jobs that he gets with defendant, instead of paying rent.[1] Prior to that, plaintiff had never met or heard of defendant.[2]

Plaintiff claims that before he took his car to defendant's business premises, defendant told him that he would insure the car and that he would take care of the car since he was head of security there. However, defendant denies ever saying that and only admits to the fact that he told plaintiff that he lived in the yard and that there never had been any problems at his garage. Defendant further claims that plaintiff's vehicle had already been delivered to

---

[1] See Transcript, p.10, lines 13-16.

[2] See Transcript, p.17, lines 24-25 and p.18, line 1.

Muddy at the garage two to three days before he ever talked to the plaintiff. There is no written evidence of any insurance agreement between the parties.[3]

Plaintiff testified that defendant told him that he would help out on the car and plaintiff further testified that he saw the defendant working on the car. Victor Graham testified on behalf of plaintiff that he went with plaintiff to defendant's premises and saw defendant working on plaintiff's vehicle along with Muddy. Defendant denies ever working or assisting in any way on the car. Plaintiff never paid defendant directly for the services performed on his car. Plaintiff testified that he made three payments of $400.00 each to Muddy for the work on the vehicle. Defendant testified that he never received a share of this money and that Muddy was required to pay him when Muddy completed any job on defendant's property.

Defendant testified that on July 25, 1993, plaintiff was informed that the work was completed and the car was ready to be picked up. However, defendant claims that plaintiff did not take the car that day because he wanted to polish his rims and "tie up some loose ends" on the car the following day. Plaintiff claims that he did not take the car because the work was incomplete as there were two spots on the car. That night, someone went unto defendant's premises, poured gasoline over plaintiff's car, and lit a gasoline trail that ended at plaintiff's car. As a result, plaintiff's car was heavily burned and suffered extensive damage. After defendant unsuccessfully tried to fix the car, plaintiff removed the car from defendant's premises and sold it for parts. He collected about $2,000.

## DISCUSSION

The Plaintiff argues that defendant Mike Kalloo is liable for damages under the legal theories of negligence, and breach of contract, both based on bailment principles. Thus, plaintiff claims that the defendant is liable for damages to the plaintiff's vehicle.

### A. No Bailment Relationship Existed between Plaintiff and Defendant

---

[3]See Transcript, page 19, lines 14-20.

28

■ The common law definition of a bailment is "the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it." *Farmer v. Machine Craft, Inc.*, 406 So.2d 981, 982 (Ala.Civ.App. 1981)(*citing* 8 Am. Jur. 2d *Bailments* § 2 (1963)); *See also* 8 C.J.S. *Bailments* § 2 (1988).

A bailment relationship can be either in writing or implied. A contract of bailment may be implied from words and acts of the parties evincing a purpose to enter into the bailment relationship toward the property, even if the result is neither foreseen nor contemplated, but only where the natural and just interpretation of the acts of the parties warrants such conclusion. 8 C.J.S. *Bailments* § 22; *See Riggs v. Commonwealth Department of Transportation*, 463 A.2d 1219, 1220 (Pa.Cmwlth. 1983). An implied-in-fact bailment may also be determined by the facts surrounding the transaction, such as benefits received by the parties, the kind of property involved, and the opportunity of each party to exercise control over the property. 8 C.J.S. *Bailments* § 22. However, no bailment can be implied where it appears that it was the intention of the parties that the property was to be held by the party in possession in some capacity other than as bailee. *Id*.

■ In order to create a bailment, possession of the subject property must pass from the bailor to the bailee, and this generally takes the form of a delivery by the bailor and an acceptance by the bailee. *Ventura v. Pearson*, 17 V.I. 107, 115 (Terr.Ct. 1980). The elements of a classic bailment are:

1) intent to create a bailment;

2) delivery of possession of the bailed items; and

3) acceptance of the items by the bailee.

8 C.J.S. *Bailments* § 19.

There must be the necessity for mutuality of duty or obligation, and the assent of both parties to the agreement. In addition, the property must be taken into the possession of the bailee, or its custody must be intrusted to him. There must be full transfer,

29

actual or constructive, so as to exclude the property from the possession of all other persons and give the bailee sole custody and control for the time being. *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250 (Tenn.App. 1980)(*citing* 8 C.J.S. *Bailments* § 15). In determining whether control exists, courts consider the following:

1) the subject matter's amenability to control;
2) steps taken to effect control;
3) the existence of power to exclude others from control; and
4) the intention with which the acts in relation to the subject matter are performed.

*Collins v. The Boeing Company*, 483 P.2d 1282, 1286 (1971). Finally, it is essential to a bailment that there be an acceptance of the subject matter by the bailee for a particular purpose. 8 C.J.S. *Bailments* § 24. The duties and responsibilities of a bailee cannot be imposed on a person without his knowledge or consent, and the bailee must have voluntarily assumed custody and possession of the property. *Id.; See Farmer v. Machine Craft, Inc.*, 406 So.2d at 982-983. Ordinarily, knowingly taking property into possession or control is a sufficient acceptance and may be sufficient to establish an implied bailment, but in order to have that result the delivery must be made for the purpose of creating a bailment. 8 C.J.S. *Bailments* § 24.

■ It must also be noted that acceptance of a bailment may be by a duly authorized agent for the bailee, and where the business of an employer customarily, or of necessity, includes as an incident thereto the acceptance as bailee of certain classes of personal property; an acceptance of such property by his employee, while acting within the real or apparent scope of his employment in such business, will bind the employer, even though the agent or employee never actually delivers such property to the employer or principal. 8 Am. Jur. 2d *Bailments* § 58.

In the case *sub judice*, plaintiff did not prove the elements of a bailment through either an express or implied agreement.

■ First, plaintiff has not met his burden of proving that defendant intended or assented to enter into a bailment relationship. The only bailment relationship that plaintiff proved is the one created between he and Muddy.

Despite plaintiff's allegations in his post trial brief that he negotiated with defendant for the repair of his vehicle, paid defendant for the repairs, and relinquished control of his vehicle to defendant, the evidence in this case does not support plaintiff's allegations. Specifically, the following facts were proved at trial:

1) Muddy was the first person that plaintiff contacted about performing bodywork and paint job services on his 1991 Mustang;

2) In June 1993, Muddy agreed to perform body work and a paint job on plaintiff's car;

3) Muddy did not work for defendant. In essence, Muddy was subleasing a portion of defendant's business premise in order to perform body work services;

4) Plaintiff paid Muddy for the services performed on his vehicle.

5) Defendant's business license is for a wrecking service and not for vehicle body repair.

The above-mentioned facts taken together clearly demonstrate that defendant never negotiated or entered into an agreement with plaintiff for the purpose of doing body work on plaintiff's car. The facts merely show that defendant knew that the vehicle would be stored on his premises with Muddy retaining custody of the vehicle, not that he agreed or intended to possess the vehicle in the capacity as a bailee. Plaintiff's case would be stronger if he could show that Muddy was an employee or agent of defendant, but the facts reveal that Muddy merely split his profits with defendant 70/30 in order to rent a section of the shed located at defendant's business premises.[4] Plaintiff knew of this arrangement as well as the fact that "Muddy" was not employed by defendant's business.

Moreover, there is no evidence that plaintiff delivered his car to defendant in a manner that would allow this Court to determine

---

[4] Defendant testified that the reason he had a percentage arrangement instead of a set rental with Muddy was because he had problems collecting the monthly rent from previous tenants because the tenants were always arguing about not being able to get enough work. Defendant stated that he went on a percent deal with Muddy so that he would not have a problem collecting his rent. See Transcript. p.44, lines 2-8.

31

that defendant accepted plaintiff's vehicle as a bailee and exercised control of the property to the exclusion of others. The facts again show that all the arrangements regarding work on the car were made between plaintiff and Muddy. Plaintiff never paid defendant for any of the services performed nor did defendant receive a share of the money given to Muddy by plaintiff. Plaintiff simply failed to prove that he delivered the car to defendant with the intention that defendant was to have exclusive possession of the vehicle. Indeed, defendant testified that the car was already in the garage two to three days before he ever met plaintiff. Moreover, plaintiff presented no evidence as to whether he relinquished the vehicle's keys to defendant. It is therefore evident that no bailment relationship existed between plaintiff and defendant.

## II. The Plaintiff has not Proven that Defendant was Negligent

Assuming, for the sake of argument, that a bailment relationship existed between the plaintiff and defendant, there is still no evidence before this court to show that defendant was negligent with respect to the bailed property.

■ Once a bailment relationship has been established, the law imposes upon the bailee certain duties and obligations with respect to the bailed property in his possession. *Christensen v. Hoover*, 643 P.2d 525 (Colo. 1982). The duty to exercise diligence in protecting the bailed property begins with the delivery of the property to him and continues until the object of the bailment has been carried out. *Loeb v. Whitton*, 49 S.E.2d 785 (Ga. Ct. App. 1948).

■ An ordinary bailee is not an insurer of the subject of the bailment, unless specified for in an agreement, and is only liable for negligent loss of, or damage to, the property. 8 C.J.S. *Bailments* § 47; *Commercial Molasses Corp. v. New York Tank Barge Corp.*, 62 S.Ct. 156, 314 U.S. 104 (1941); *Big John, B.V. v. Indian Head Grain Co.*, 718 F.2d 143 (5th Cir. 1983). In the absence of negligence, the common-law liability of a bailee does not make him liable for loss of the property by theft or its being taken from him by force, or for the destruction of the property by a fortuitous event. 8 C.J.S. *Bailments* § 47.

■ With regards to the particular standards of care and diligence imposed by law on a bailee in caring for the property intrusted to him, the rule supported by many of the more recent authorities is that it is the duty of the bailee to exercise reasonable care, and that what constitutes reasonable care will depend upon the nature, value, and quality of the subject of the bailment, the circumstances under which it is deposited and sometimes upon the character and conference and particular dealings of the parties. 8 Am. Jur. 2d *Bailments* § 204; *See Preston v. Prather*, 137 U.S. 604, 11 S.Ct. 162 (1891). Where a bailment is for mutual benefit, the bailee, in the absence of a special contract, must exercise ordinary care with regard to the bailed property unless he expressly agrees to be strictly liable for its preservation. *See* 8 C.J.S. *Bailments* § 56; *Solano v. Beilby*, 761 F.2d 1369 (9th Cir. 1985); *Ferrick Excavating and Grading Co. v. Senger Trucking Co.*, 484 A.2d 744 (Pa. 1984).

■ In an action for negligence, the plaintiff has the burden of proving

> (a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff,

> (b) failure of the defendant to conform to the standard of conduct,

> (c) that such failure is a legal cause of the harm suffered by the plaintiff, and

> (d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages.

RESTATEMENT (SECOND) OF TORTS § 328A (1965). However, in an action between a bailor and bailee, it has been generally held, where the bailee fails to return the bailed property, or returns it in a damaged condition, a presumption that the loss or damage was the result of the bailee's negligence arises and prevails unless and until the bailee offers proof that negligence was not the proximate cause of the loss or damage. *See Shank v. Harvey*, 16 V.I. 229 (Terr.Ct. 1979). Hence, where chattels are delivered to a bailee in good condition and are returned in a damaged state, or are lost or not returned at

33

all, the law presumes the bailee's negligence or other fault to be the cause, and casts on the bailee the burden of showing that the loss was due to other causes consistent with due care on his part. 8 C.J.S *Bailments* § 112; *See also Commercial Molasses*, 62 S.Ct. at 161; *American Enka Co. v. Wicaco Mach. Corp.*686 F.2d 1050, 1053 (3d Cir. 1982). Generally, the bailee may ordinarily rebut the presumption of negligence arising from failure to return goods intrusted to him by proof of loss arising. . .from fire, free from fault on his part, in which case the burden is then on the bailor to go forward with the evidence, as at first, to prove that the loss was due to the bailee's negligence. 8 C.J.S. § 112; *See also Hammond v. United States*, 173 F.2d 860, 863 (6th Cir. 1949); *Girard Trust Corn Exchange Bank v. Brinks, Inc.*, 220 A.2d 827 (Penn. 1986); *Swan v. United GMC Truck, Inc.*, 159 A.2d 550, 551 (Pa. Super.Ct. 1960); *Huck-Gerhardt Co. v. Kendall*, 149 A.2d 169 (Pa. 1959). Where, however, the bailee proves loss or damage of the bailed article by theft or fire, but attempts no explanation of the circumstances and offers no proof of facts from which an inference of due care may be drawn, he does not rebut the presumption of his negligence arising from failure to return the bailed property. 8 C.J.S. § 112; *Mueller v. Soffer*, 513 N.E.2d 1198, 1202 (Ill. App. 5 Dist. 1987)[5] *Griffin v. Nationwide Moving & Storage Co.*, 446 A.2d 799, 802 (Conn. 1982); *Hopper's Inc. v. Red Bank Airport, Inc.*, 83 A.2d 457 (N.J. Super. Ct. 1951).[6]

 Despite contrary authority, generally, the effect of a prima facie case made is not to shift the ultimate burden of proof from bailor to bailee, but merely to shift the burden of proceeding or going forward with the evidence. *See Commercial Molasses*, 62 S.Ct. at 161. The ultimate burden of establishing negligence is on the bailor and remains on him throughout the trial, except that the bailor need not prove the bailee's negligence when the bailee fails

---

[5] The court held that "bailees who failed to return property due to destruction of warehouse by fire did not rebut presumption of negligence, where there was no evidence concerning nature, origin, or cause of fire, and bailee made no effort to determine whether property was salvageable."

[6] The court held that in order to rebut the presumption of negligence, the defendant bailee was required to couple its evidence that the goods were destroyed or damaged by fire at its premises with an explanation of the circumstances.

to come forward with a satisfactory explanation. *Id.; Lehman v. Lehman*, 591 F.Supp. 1523 (S.D. New York 1984).

 In the instant matter, defendant explained that the reason plaintiff received a damaged vehicle was because someone entered his premises, poured gasoline over plaintiff's vehicle, and lit a gasoline trail which resulted in plaintiff's vehicle being burned. When plaintiff's vehicle was burned, it was located in the shed. In addition, defendant testified that when he observed the fire, he immediately got a fire extinguisher that was on the wall and called for a fire truck and the police. He then started to put out the fire and subsequently made a police report about the incident. Defendant has adequately explained the circumstances regarding the failure to return to plaintiff his vehicle and successfully rebutted the presumption of negligence. Accordingly, plaintiff had to come forward and prove that the bailee's negligence proximately caused the loss.

 Plaintiff, in his post trial brief, attempts to argue that defendant was negligent in that he failed to provide proper security for defendant's vehicle. Specifically, plaintiff claims defendant failed to have adequate lighting or fencing, failed to keep a nightly watch or to provide someone else to do so despite defendant's guarantee that he would provide security for the vehicle in the night. Despite these claims, the court notes that plaintiff never presented any testimony at trial with regards to these security measures and whether these measures are the standard of conduct for a bailee in the body repair industry. Specifically, plaintiff failed to show that the facts in this case gave rise to a legal duty on the part of the defendant to take such security measures with respect to his vehicle or that defendant failed to conform to the standard of conduct established by law for the protection of the plaintiff. Additionally, there is no evidence that defendant's conduct was the proximate cause of plaintiff's vehicle being burned. The evidence presented supports the fact that plaintiff's vehicle was burned by a third party. Accordingly, plaintiff did not meet his burden of proof with respect to the issue of whether defendant was negligent with respect to plaintiff's vehicle.

## CONCLUSION

The evidence presented at trial in this matter shows that the parties never entered into a bailment relationship with regards to the repair of plaintiff's vehicle. The only bailment relationship created was between plaintiff and Muddy, a sub-lessee of a portion of defendant's business premises. Additionally, even if the Court were to assume that defendant was a bailee of plaintiff's vehicle, defendant has failed to meet his burden in proving that defendant was negligent with regards to the care of plaintiff's vehicle. Accordingly, the court shall enter judgment in favor of defendant.