**DON–LIN JEWELRY CO., INC.**

v.

**THE WESTIN HOTEL COMPANY.**

No. 2004–153–Appeal.

Supreme Court of Rhode Island.

June 30, 2005.

Christopher J. O'Connor, Providence, for Plaintiff.

Michael P. DeFanti, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**OPINION**

PER CURIAM.

This case came before the Supreme Court on April 6, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown. We proceed to decide the appeal at this time.

This dispute centers on whether a bailment was created between plaintiff, Don-Lin Jewelry Co., Inc. (Don-Lin or plaintiff),[1] and defendant, The Westin Hotel Company (The Westin, hotel, or defen-

dant), with respect to two boxes of jewelry prototypes (boxes or bailed property) that plaintiff left with defendant for inspection by a prospective buyer.

**Facts and Travel**

In March 1996, Richard St. Angelo (St. Angelo), acting as Don-Lin's vice president of sales, left two boxes of jewelry prototypes at the front desk of The Westin in Providence with instructions to deliver the boxes to the hotel's guests from Dillard's, Inc. (Dillard's), a national department store, who were using a conference room at the hotel. This delivery took place. After a representative from Dillard's notified plaintiff that the boxes were ready to be retrieved by Don-Lin, St. Angelo returned to the hotel and requested the boxes. The boxes were missing and have not been seen again. After The Westin failed to return the boxes, plaintiff filed suit in Superior Court alleging breach of a bailment agreement, negligence, and conversion against The Westin, but not Dillard's.

On February 23, 2004, a nonjury trial was held in the Providence County Superior Court. St. Angelo testified that plaintiff manufactured jewelry for sale to retailers. St. Angelo explained that Dillard's sent a representative to Providence in March 1996 and the representative selected approximately 240 prototypes from Don-Lin's line of merchandise to include in a "style-out." At the request of Dillard's, St. Angelo packaged those prototypes into boxes with "Don-Lin Jewelry" printed on all six sides, delivered the boxes to the front desk of The Westin, and requested the boxes be delivered to the conference room where the group from Dil-

---

1. After the commencement of this action, the Rhode Island Secretary of State revoked Don-Lin's charter, but defendant did not seek to amend its answer to raise lack of capacity to sue as an affirmative defense.

lard's was working.[2] St. Angelo testified that the front desk clerk acknowledged that a group from Dillard's had a conference room at the hotel, and St. Angelo recalled a bellman taking the boxes to a room off the lobby.

St. Angelo also testified that, in accordance with Don–Lin's past practice with Dillard's, after performing the style-out, Dillard's was expected to pack the prototypes into the boxes and deliver them to The Westin to hold for Don–Lin to collect.

St. Angelo explained that a representative from Dillard's notified him that Dillard's was finished with the prototypes and the boxes were ready to be picked-up at The Westin but did not specify a location in the hotel where the boxes could be retrieved. When he reported to the front desk, the desk clerk directed a bellman to accompany St. Angelo to a locked room to search for the boxes. After a careful search, the boxes were not found. According to St. Angelo, the bellman recalled seeing the boxes but did not know where they were. The manager conducted an unsuccessful search of the conference room. St. Angelo repeatedly called and visited The Westin to check for the boxes without success. This lawsuit ensued.

At trial, Harry Jones (Jones), property manager and head of security of The Westin in Providence, testified that The Westin was unable to confirm or deny whether it had possession of plaintiff's boxes. He testified that the hotel used a locked room off the lobby to store items at the request of its guests and that only employees of the hotel had access to that room. Jones acknowledged that it was not "unusual for the hotel to take a package from a guest for the benefit of someone who would pick it up at the front desk."

At the close of plaintiff's evidence, defendant moved to dismiss in accordance with Rule 41 of the Superior Court Rules of Civil Procedure. The trial justice was satisfied that, by delivering the boxes to Dillard's, The Westin fulfilled any legal obligation it may have had to Don–Lin. The trial justice granted defendant's motion and dismissed the action, finding that the evidence did not establish a gratuitous bailment, a bailment for hire, or any other legal obligation between Don–Lin and The Westin with regard to the return of the jewelry prototypes after The Westin delivered the boxes to Dillard's. The trial justice granted judgment for defendant, and plaintiff appealed.

The plaintiff asks this Court to reverse the Superior Court's findings, contending that a bailment arose between the parties and that defendant breached the bailment. Further, plaintiff asks this Court to remand the case to the Superior Court for a determination of damages.

## Standard of Review

■ In a nonjury case, when passing upon a motion to dismiss pursuant to Rule 41(b)(2), the trial justice "must weigh and consider the evidence, pass upon the credibility of the witnesses, and engage in the drawing of inferences."[3] *Estate of Meller*

---

2. St. Angelo expected Dillard's to remove the prototypes from the boxes, along with the products of other companies, and decide which groups to purchase.

3. Rule 41(b) of the Superior Court Rules of Civil Procedure provides:
   "*Involuntary Dismissal: Effect Thereof.*
   "(1) *On Courts Own Motion.* The court may, in its discretion, dismiss any action for lack of prosecution where the action has been pending for more than 5 years, or, at any time, for failure of the plaintiff to comply with these rules or to proceed when the action is reached for trial. Notice that an action will be in order for dismissal on a day certain shall be mailed to the plaintiffs attorney of record and to the plaintiff if the plaintiffs address be known. If there be no

*v. Adolf Meller Co.,* 554 A.2d 648, 651 (R.I.1989).

■ "When a trial justice grants a motion to dismiss under Rule 41(b)(2) on the ground that the plaintiff has failed to establish a right to relief, it is the function of this [C]ourt to review the factual findings and determinations of the trial justice in accordance with a deferential standard." *Estate of Meller,* 554 A.2d at 651. We review the evidence to determine whether there is sufficient evidentiary support for the findings or whether the trial justice misconceived or overlooked any material evidence. *Id.* "We must then determine whether the trial justice has made supportable findings of fact and whether he or she has applied the correct rule of law." *DeMascole v. Tatro,* 673 A.2d 57, 60 (R.I. 1996).

## Discussion

Before this Court, plaintiff argues that probative evidence demonstrating that a bailment relationship arose from the conduct of the parties is evident in the record, and by not delivering possession of the boxes to plaintiff upon request, defendant breached the bailment.

■ It is undisputed that plaintiff was not a guest at The Westin.[4] As such, any obligation The Westin assumed for the care of plaintiff's boxes left in its possession was not as a hotelkeeper but, at best, was that of a bailee. 19 Samuel Williston, *A Treatise on the Law of Contracts* § 53:75 at 308–09 (Richard A. Lord 4th ed.

2001). A bailment is "a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." *Gallo v. American Egg Co.,* 76 R.I. 450, 456, 72 A.2d 166, 169 (1950) (quoting *Emond v. Fallon,* 56 R.I. 419, 425, 186 A. 15, 18 (1936)). By delivering possession of the boxes to The Westin without giving any consideration, plaintiff and defendant entered into a gratuitous bailment. *Lowney v. Knott,* 83 R.I. 505, 508–09, 120 A.2d 552, 554 (1956).

■ St. Angelo, on behalf of plaintiff, surrendered possession of the personalty to defendant with the sole instruction that the boxes be delivered to the conference room where the group from Dillard's was working. The record discloses that The Westin complied with that direction. A bailment terminates upon the surrender of possession in compliance with the bailment agreement. *See Gallo,* 76 R.I. at 456, 72 A.2d at 169. By delivering the jewelry prototypes to Dillard's pursuant to plaintiff's instructions, defendant satisfied its obligations under the bailment with plaintiff. The plaintiff cannot hold defendant liable for loss of the bailed property that occurred after the hotel delivered possession of the bailed property to Dillard's under the terms of the bailment. Don–Lin claims damages arising from events that

___

attorney of record and if the plaintiffs address is not known, such notice shall be published as directed by the court in accordance with statutory provisions.

"(2) *On Motion of the Defendant.* On motion of the defendant the court may, in its discretion, dismiss any action for failure of the plaintiff to comply with these rules or any order of court or for lack of prosecu-

tion as provided in paragraph (1) of this subdivision."

4. General Laws 1956 §§ 5–14–1 and 5–14–2 govern the liability of a hotelkeeper to its guests for the safekeeping of guest property. When plaintiff left the boxes at the front desk, plaintiff was not a guest at The Westin, and therefore, these statutes do not apply to the facts before us.

occurred after this bailment was completed.

The plaintiff alleges that the boxes were subject to a second bailment commencing when Dillard's returned the boxes to The Westin. We are satisfied that the evidence supported the trial justice's conclusion that "for the second part of the transaction, this is, the return of the goods, the bailor at that time was Dillard[']s, and if there was a bail[ment] relationship[,] * * * it was between Dillard[']s and the hotel."

The plaintiff was not a party to that bailment, and therefore, it could only seek to hold The Westin liable as a third party beneficiary. However, whatever the merits of that claim, the plaintiff never pled this theory in its complaint nor otherwise raised it before the Superior Court. Consequently, this issue is not properly before us. *Volpe v. Fleet National Bank*, 710 A.2d 661, 663 (R.I.1998).

For the foregoing reasons, we affirm the judgment of the Superior Court. The papers of the case are remanded to the Superior Court.