# CAPE AIR INTERNATIONAL, Appellant/Defendant
## v.
# TOMMY LINDSEY and DENISE LINDSEY, Appellees/Plaintiffs

S. Ct. Civ. No. 2009-030

Supreme Court of the Virgin Islands

June 23, 2010

606

CHAD C. MESSIER, ESQ., JUSTIN K. HOLCOMBE, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *Attorneys for Appellant.*

RACHEL E. MORRISON, ESQ., Morrison Law Offices, LLC, St. Croix, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice.*

## OPINION OF THE COURT

(June 23, 2010)

CABRET, J. In the underlying small claims action, Tommy Lindsey ("Mr. Lindsey") and Denise Lindsey ("Mrs. Lindsey") sued Hyannis Air Services, Inc., doing business as Cape Air ("Cape Air"), alleging that Cape Air was liable for jewelry stolen from Mr. Lindsey's luggage when he traveled on a Cape Air flight. At a bench trial, Cape Air asserted that its contract of carriage ("Contract of Carriage") precluded liability for the missing jewelry. The Superior Court rejected the defense, however, ruling that because the Contract of Carriage submitted by Cape Air "did not contain a signature, the submitted document could not be considered as binding legal authority." (App. 11.) Based on this ruling, the Superior Court entered judgment in favor of the Lindseys and against Cape Air.

Cape Air filed this appeal arguing, among other points, that the Superior Court erred in granting judgment to the Lindseys because the Contract of Carriage did not require a signature to be enforceable and because the Lindseys did not present any evidence that Cape Air's negligence caused the loss. Because we agree that the Lindseys failed to present sufficient evidence that the jewelry was stolen as a result of Cape Air's negligence, the Superior Court's judgment in favor of the Lindseys is reversed.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that on April 24, 2008, Tommy Lindsey travelled from San Juan, Puerto Rico to St. Croix as a passenger aboard a Cape Air plane. Mr. Lindsey had apparently checked two bags for his flight, but also had two bags he intended to carry on the plane: a "laptop bag and a carry-on duffle." (App. 39.) As Mr. Lindsey was boarding his flight in San Juan, a Cape Air representative took the two carry-on bags and told him they would be stored on the aircraft and returned to him when they arrived on St. Croix. After exiting from the plane on St. Croix, Mr. Lindsey retrieved his laptop bag, but was told that because there was another aircraft approaching, he needed to go to the terminal where he could obtain his second carry-on bag from the baggage claim carousel.

When Mr. Lindsey arrived at the terminal, his wife Denise was waiting for him. Mr. Lindsey handed her his laptop bag and went to retrieve his other bags from the baggage claim carousel inside the terminal. Mr. Lindsey picked up his two checked bags from the carousel, but failed to recover his carry-on duffle, believing his wife had already retrieved it. After loading the luggage into their car, the Lindseys left the airport. The couple realized their mistake when they arrived home later that night, but by that time the airport had closed for the evening.

At 8:00 the next morning the Lindseys returned to the airport to retrieve the bag. According to Mr. Lindsey:

> a girl met me at the counter and I told her that a bag was left behind accidentally the previous night. And she turned around and there was [sic] three bags on the floor and she pointed directly at my bag and asked me if that was my bag out of those three bags and I said yes it is. So we got the bag.

(App. 41.) Apparently concerned about a jewelry box they had left in the carry-on duffle, the Lindseys immediately opened the bag and saw the jewelry box was still there. Upon unpacking the bag at home, however, Mrs. Lindsey found that all of her gold jewelry had been taken from the box.

On April 29, 2008, the Lindseys submitted a claim form to Cape Air asserting that jewelry, itemized on the form with a value of $2,265.00, was stolen from the carry-on duffle. Cape Air rejected the claim, and on August 27, 2008, Denise Lindsey filed a civil action in the Small Claims Division of the Superior Court alleging that Cape Air was liable for $2,265.00, the alleged value of the missing jewelry. On December 9, 2008, the Lindseys filed a second civil action against Cape Air, this time naming both Mr. Lindsey and Mrs. Lindsey as plaintiffs and claiming that Cape Air was liable for $3,040.00. The Lindseys' second, hand-written, *pro se*, small claims complaint against Cape Air did not articulate whether their claim for the value of the missing jewelry is grounded in tort or contract law, but merely stated that it is an action for "(Debt) theft from carry-on baggage." (App. 8.) The Lindseys acknowledged in the complaint that Mr. Lindsey was "told that the carry-on baggage would be placed on [the] carousel," and they further conceded that they did not retrieve the carry-on bag due to "confusion at baggage claim." (App. 8.)

The Small Claims Division conducted a bench trial on the second complaint on February 10, 2009. The Lindseys appeared *pro se*, and Cape Air was represented by its Vice-President of Customer Relations, Cynthia Beaton. During the trial, Mr. Lindsey testified about the events precipitating the couple's discovery that jewelry was missing, and Mrs. Lindsey testified about the value of the jewelry. Mrs. Lindsey described each piece of jewelry that was missing, including two pieces of jewelry that she had not listed on her original claim with Cape Air.[1] Mrs. Lindsey estimated her original purchase price of each piece of jewelry and stated that "$3,400 is what I estimate for the replacement value of now or would be different [sic], but that is the best from my knowledge of what we paid for them originally." (App. 46.)

In its defense of the claim, Cape Air relied on a liability limitation contained in the Contract of Carriage. Beaton presented the court with a

---

[1] The value of these additional two pieces of jewelry account for the discrepancy between the damages claimed by the Lindseys in their original small claims complaint and the instant complaint.

copy of the Contract of Carriage and testified that the airline declined the claim because it is "not liable for items of extraordinary value . . . ." (App. 48.) It does not appear that the trial judge read the Contract of Carriage, but when he remarked that he did not "see any signature" on the exhibit, Beaton stated that "the Contract of Carriage is our binding agreement between our passengers and the company . . . and I'm not sure about a signature." (App. 49.) The trial judge continued to question Beaton about the applicability of the Contract of Carriage and whether she could provide a "legal reason why [it] would be operative." (App. 50.) Apparently unversed in the legal complexities surrounding the Contract of Carriage, Beaton was unable to further explain to the court the reasons why Mr. Lindsey would be bound by the liability limitation contained in the document. When the court asked the Lindseys whether they had any further evidence, Mr. Lindsey produced two Cape Air baggage claim check stubs given to him for the two bags he checked onto the flight. The baggage claim check stubs state in part: "Baggage Checked subject to Conditions of Contract or Tariffs, including limitations of liability therein contained." (App. 21.)

At the close of the evidence, the trial judge stated:

> This claim is for . . . stolen items, which the testimony has established. The only question remaining for me to decide is whether or not the contract that was submitted to me as evidence from the carrier covers this particular claim. I can't tell from the evidence presented here. I will allow Cape Air to submit whatever evidence they have to substantiate their defense . . . .

(App. 21.) When Beaton asked the court whether she should submit another contract of carriage from Cape Air's legal department, the trial judge responded:

> Submit whatever you and your superiors believe support your defense because there is no question in my mind that the Plaintiffs have made out a case for lost or stolen items. The issue is whether or not Cape Air has a legal reason to deny that claim. I haven't seen anything yet, but I'm gonna give you an opportunity, since you seem to be overwhelmed by the questions I asked you, to have your legal counsel submit what he perceives, he or she perceives to be the defense.

(App. 57.)

Cape Air did not submit any further evidence or argument, and on March 18, 2009, the Superior Court entered an order awarding judgment to the Lindseys in the amount of $3,080.00. In its order, the court noted that Cape Air's defense was based on its Contract of Carriage, but found that

> since the Defendant's evidentiary submission did not contain a signature, the submitted document could not be considered as binding legal authority. The Court ordered the Defendant to submit any further substantiation of its applicability and accordingly withheld a ruling. To date, more than thirty (30) days have passed since the February 10, 2009 hearing and the Defendant has failed to submit any legal documentation of its position.

(App. 11.) Cape Air filed its Notice of Appeal from that judgment on April 1, 2009.

Both Cape Air and the Lindseys are represented by counsel on appeal. Cape Air asserts that the Superior Court erred in entering judgment in favor of the Lindseys because its Contract of Carriage was binding on the Lindseys notwithstanding the absence of a signature. Cape Air also asserts that the evidence was insufficient to support a judgment for the Lindseys because they "failed to establish that Cape Air was in exclusive control of the baggage claim area during the time that their bag remained in the airport."[2] (Appellant's Br. 2.)

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." In considering the appeal of Cape Air, our standard of review is as follows:

> The standard of review for this Court in examining the Superior Court's application of law is plenary. Findings of fact are reviewed on appeal under a clearly erroneous standard of review. The appellate

---

[2] Although Cape Air also challenges the Lindseys' evidence of damages, because we conclude that the Superior Court erred in granting judgment to the Lindseys on other grounds, it is unnecessary to address this assertion.

court must accept the factual determination of the fact finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

*St. Thomas-St. John Board of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007) (citations and quotation marks omitted). In addition, because this was a small claims matter, we should remain mindful that the goal of the trial judge was "to do substantial justice between the parties." SUPER. CT. R. 64.

## III. DISCUSSION

### A. Airline Contracts of Carriage Do Not Require A Signature to Be Enforceable.

■ As argued by Cape Air, the lack of a signature did not render the Contract of Carriage unenforceable. Indeed, the Lindseys concede in their appellate brief "that Contracts of Carriage are valid and binding despite the absence of a passenger's signature." (Appellees Br. 6.) In this regard, the Airline Deregulation Act of 1978 ("ADA")[3] provides that "[t]o the extent the Secretary of Transportation prescribes by regulation, an air carrier may incorporate by reference in a ticket or written instrument any term of the contract for providing interstate air transportation." 49 U.S.C. § 41707. Thus, it is clear that Cape Air was authorized to incorporate by reference its Contract of Carriage into Mr. Lindsey's ticket or other document and that to the extent the Superior Court ruled that a signature was required to render the Contract of Carriage enforceable, the court erred.

But reading the Superior Court's ruling so narrowly likely discounts the true basis of the court's decision. The trial judge was confronted with Cape Air's defense that a liability limitation contained in the Contract of Carriage precluded the Lindseys' claim, but Cape Air presented no evidence or argument establishing that the Lindseys were bound by the contract terms. As stated above, the ADA permitted Cape Air, to the extent allowed by the applicable regulations, to "incorporate by reference in a ticket or written instrument any term of the contract." *Id.* The applicable federal regulations provide:

---

[3] The ADA is codified at 49 U.S.C. § 40101 *et. seq.*

■

(a) A ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference (i.e., without stating their full text), and if it does so shall contain or be accompanied by notice to the passenger as required by this part. In addition to other remedies at law, *an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part.*

(b) Each air carrier shall make the full text of each term that it incorporates by reference in a contract of carriage available for public inspection at each of its airport and city ticket offices.

(c) Each air carrier shall provide free of charge by mail or other delivery service to passengers, upon their request, a copy of the full text of its terms incorporated by reference in the contract. Each carrier shall keep available at all times, free of charge, at all locations where its tickets are sold within the United States information sufficient to enable passengers to order the full text of such terms.

14 C.F.R. § 253.4 (emphasis added). The notice requirements are further delineated in 14 C.F.R. § 253.5, which provides in part:

Except as provided in § 253.8,[4] each air carrier shall include on or with a ticket, or other written instrument given to a passenger, that embodies the contract of carriage and incorporates terms by reference in that contract, a conspicuous notice that:

(a) Any terms incorporated by reference are part of the contract, passengers may inspect the full text of each term incorporated by reference at the carrier's airport or city ticket offices, and passengers have the right, upon request at any location where the carrier's tickets are sold within the United States, to receive free of charge by mail or other delivery service the full text of each such incorporated term[.]

■ Courts apply a two-step analysis to determine "whether liability-limiting provisions are adequately plain and conspicuous to give

---

4 Cape Air does not argue that any exception in section 253.8 applies to this case.

reasonable notice of their meaning." *Casas v. American Airlines, Inc.* 304 F.3d 517, 524 (5th Cir. 2002) (citing *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir. 1997). "A court first examines whether the contract documents provide reasonable notice to the customer, and then considers whether the conditions under which the shipment was made offered the customer an opportunity to receive notice of the liability limitations." *Id.* The first part of this analysis looks to the "[p]hysical [c]haracteristics of the [t]icket/[c]ontract, [f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question." *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987) (citations and quotation marks omitted). The second part of the analysis focuses on "the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract" and takes into account "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* (citations and quotation marks omitted).

 The notice required by these regulations seems precisely what the trial judge was looking for when he repeatedly asked Cape Air's representative why the Lindseys were bound by the Contract of Carriage. In fact, the trial judge left the record open to allow Cape Air, or its legal counsel, to submit any evidence or argument it had to substantiate its defense that the Contract of Carriage barred the Lindseys' claim.[5] But Cape Air did not submit *any* evidence that it gave Mr. Lindsey reasonable notice of the pertinent liability limiting provisions in the Contract of Carriage. In fact, the only evidence produced at trial that even referenced a contract, passenger ticket or the circumstances surrounding Mr. Lindsey's purchase or retention of his ticket were the two baggage

---

[5] Cape Air asserts that "[i]n making a request for Cape Air to have legal counsel submit briefs on the law, the Superior court failed to adhere to the requirement set forth in 4 V.I.C. § 112 that '[n]either party may be represented by counsel and parties shall in all cases appear in person except for corporate parties, associations and partnerships which may appear by a personal representative.' " (Appellant's Br. 8 (quoting 4 V.I.C. § 112(d))). While the propriety of the of the trial judge's statement permitting Cape Air's legal counsel to file any supplemental evidence or briefing in this small claims action is questionable under section 112(d), because we are vacating the judgment on other grounds, it is unnecessary to rule on this issue.

claim check stubs produced by Mr. Lindsey. But the notice provided on those two baggage claim check stubs merely stated: "Baggage Checked subject to Conditions of Contract or Tariffs, including limitations of liability contained therein." (App. 21.) To the extent that this notice attempts to incorporate by reference the Contract of Carriage, it expressly limited that incorporation to the "Baggage Checked." The Contract of Carriage distinguishes between checked baggage and carry-on baggage, and the two bags checked by Mr. Lindsey are not the subject of the instant dispute. Furthermore, the baggage claim checks stubs did not include any conspicuous notice that the passenger, Mr. Lindsey, could "inspect the full text of each term incorporated by reference at [Cape Air's] airport or city ticket offices," or that Mr. Lindsey could receive a free copy of the incorporated terms. *See* 14 C.F.R. § 253.5(a).

Under these circumstances, Cape Air failed to establish that it provided Mr. Lindsey with reasonable notice that the liability limiting provisions in the Contract of Carriage were incorporated by reference into his ticket or some other written instrument given to him. While in its appellate brief Cape Air points to a liability limitation contained on a document[6] that it purports is Mr. Lindsey's "ticket folder" (Appellant's Reply Br. 2), "[s]tatements made in briefs are not evidence of facts asserted," *Versarge v. Township of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993) (citation and quotation marks omitted), and there is no indication in the record that this document is, in fact, a ticket folder or that it was provided to Mr. Lindsey prior to his Cape Air flight. Indeed, there is no reference to the document in the trial transcript, and it is unclear whether the Superior Court even admitted it into evidence. Although it may well be the case that Mr. Lindsey's airline ticket or some other document provided to him by Cape Air properly incorporated the liability limitation terms contained in the Contract of Carriage, Cape Air failed to produce any such evidence at trial. Accordingly, the Superior Court's conclusion — that Mr. Lindsey was not bound by the liability limitation

---

[6] The baggage liability limitation on this document provides, in pertinent part:

Cape Air assumes no responsibility or liability for loss or damage to unchecked carry — on baggage, or personal wing items (e.g. those carried by the customer to the aircraft and stored in the wing locker prior to boarding), unless the loss or damage was caused by the sole negligence or willful misconduct of Cape Air.

(App. 22.)

at issue — while premised on misapprehension that the contract required a signature, was nonetheless correct. Without conspicuous notice of the Contract of Carriage liability limitations, Cape Air could not rely on its terms.

## B. The Lindseys Failed To Establish That Jewelry Was Missing As A Result Of Cape Air's Negligence.

Having concluded that Cape Air could not rely on the liability limitation contained in the Contract of Carriage, we must determine whether the Superior Court properly found Cape Air liable for the Lindseys' loss based on the evidence presented at trial. The Lindseys' hand-written, *pro se*, small claims complaint against Cape Air does not articulate whether their claim for the value of the missing jewelry is grounded in tort or contract law. The complaint merely states that it is an action for "(Debt) theft from carry-on baggage" (App. 8) and recites the factual allegations surrounding the missing jewelry. These factual allegations, like the evidence presented at trial, show that Cape Air representatives told Mr. Lindsey that his carry-on bag would be placed on the baggage claim carousel inside the terminal, and that Mr. Lindsey failed to retrieve the bag from the carousel through no fault of Cape Air. The Superior Court concluded that the evidence established "a case for lost or stolen items," (App. 57) and awarded them the full amount of their claim.

Before addressing whether the evidence established a prima facie case for relief, it is necessary to ascertain the cause of action that provided the basis for the Lindseys' claim. While this might be a simple matter if it were clear that Virgin Islands law applied to the claim, the preemptive provision of the ADA prohibits states and territories from "enact[ing] or enforc[ing] any law . . . relating to [air carrier] rates, routes, or services." 49 U.S.C. § 41713(b)(1). The question presented in the instant case is whether Cape Air's alleged mishandling of Mr. Lindsey's carry-on bag was 'related' to the airline's provision of 'services' as those terms are used in the preemptive provision. If such baggage handling is related to the airline's services, then a claim based on Virgin Islands law would be preempted by the ADA.

██ The interpretation of a preemption provision begins with "the presumption that Congress does not intend to supplant state law." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193-94 (3d Cir.

1998) (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travellers Ins. Co.*, 514 U.S. 645, 654, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995)); *accord Elassaad v. Independence Air, Inc.*, 604 F.3d 804, 810 (3d Cir. 2010). Federal Circuit Courts of Appeal are split on whether state law claims arising from an airline's baggage handling relate to an airline's "service" rendering the claims preempted by federal law. In *Air Transp. Assn. of Am. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008), the court observed that:

> A majority of the circuits to have construed "service" have held that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers.

*Id.* (citing *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336-38 (5th Cir. 1995) (en banc); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp. 12, 13 (D.Mass. 1995) (adopting the *Hodges* definition), *aff'd mem. sub nom. Azubuko v. Bd. of Dirs. British Airways*, 101 F.3d 106 (1st Cir. 1996). But, as recognized by the court in *Cuomo*, the Third and Ninth Circuit Courts of Appeal have taken a different approach and "construed service to refer more narrowly to 'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail,' but not to 'include an airline's provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.' " *Id.* (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc) and citing in *accord Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 193-94 (3d Cir. 1998)). This interpretation relies on the context of "service" within the ADA, specifically, its placement alongside "rates" and "routes." *See Charas*, 160 F.3d at 1266 (stating that to "interpret service more broadly is to ignore the context of its use; and it effectively would result in the pre-emption of virtually everything an airline does.").

▮▮ In *Taj Mahal*, the Third Circuit considered existing Supreme Court precedent addressing the preemption issue and found that while the Court has

> not yet directly addressed the preemption clause as applied to state tort claims, [it] has strongly indicated that they would not be barred.

[*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995)] quoted with approval the government's view of a general standard against which the issue should be considered: "[T]he ban on enacting or enforcing any law 'relating to rates, routes, or services' is most sensibly read, in light of the [Act's] overarching deregulatory purpose, to mean 'States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier.' " *Id.* at 229 n. 5, 115 S. Ct. 817.

*Taj Mahal*, 164 F.3d at 192. When Congress enacted the ADA, a "*federal* economic deregulation of the airlines, it intended to insulate the industry from possible *state* economic regulation." *Charas*, 160 F.3d at 1266 (emphasis in original). Considering this policy, the Third Circuit stated in *Taj Mahal* that "the proper inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation. When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted." *Taj Mahal*, 164 F.3d at 194 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390, 112 S. Ct. 2031, 2031, 119 L. Ed. 2d 157 (1992)). Because state tort law does not have such a regulatory effect, the court concluded that Congress must not have intended to preempt such state remedies:

> Freeing airlines from the pervasive control over prices, routes, and services that existed previously does not require a grant of sweeping immunity from the tort liability that existed throughout the regulatory era. If immunity was not deemed necessary for the industry during its infancy, it is difficult to understand why it would be necessary once the carriers were considered strong enough to fly on their own into the competitive atmosphere.

*Id.*

The Third Circuit recently reaffirmed these principals in *Elassaad*. There, the court observed that state law has traditionally governed ordinary negligence actions. *Elassaad*, 604 F.3d at 811. And, referring to its earlier opinion in *Taj Mahal*, the court recognized that:

> it is appropriate to use a restrained approach in recognizing the preemption of common law torts in the field of aviation. Although *Taj Mahal* focused on the impact of the Airline Deregulation Act, we rea-

618

soned that preemption of tort law in aviation should be constrained in part because "the Department of Transportation has neither the authority nor the apparatus required to superintend" tort disputes.

*Id.*, (citing *Taj Mahal*, 164 F.3d at 194).

 In light of the Third Circuit's opinions in *Taj Mahal* and *Elassaad*, we can discern no reason why the Lindseys' claim that Cape Air is liable for the jewelry missing from their baggage could not be based on Virgin Islands law. While Congress has clearly allowed airlines to limit their liability for missing baggage, there is no indication that it intended to immunize airlines from claims related to missing baggage subject to applicable liability limitations. The Third Circuit's interpretation of the term "services," as it is used in the preemption provision, does not include baggage handling, and we cannot conceive of how permitting a cause of action for missing baggage under the circumstances of this case, would "frustrate[] deregulation by interfering with competition through public utility-style regulation." *Taj Mahal*, 164 F.3d at 194. Accordingly, we conclude that the Lindseys' claim for the value of the jewelry missing from the Mr. Lindsey's baggage could have been based on Virgin Islands law.[7]

 While an airline's liability for missing luggage would typically be governed by the carrier's contract of carriage, in the absence of proof that Cape Air's Contract of Carriage applied to Mr. Lindsey's travel with the carrier, we will rely on an implied bailment agreement between Cape Air and Mr. Lindsey for Cape Air to carry Mr. Lindsey's luggage from Puerto Rico to St. Croix. *See In re Nantucket Aircraft Maint. Co., Inc.*, 54 B.R. 86, 88 (Bankr. D. Mass. 1985); *Barrett v. United Airlines, Inc.*, 697 P.2d 408, 409 (Colo. App. 1984). "A bailment is created whenever personal property is delivered by one person to another in trust for a specific purpose with the understanding that the property will be returned when the purpose is accomplished." *Nantucket Aircraft*, 54 B.R. at 88 (citations

---

[7] We note that federal jurisdictions which hold state law remedies preempted by federal law recognize a "cause of action for [the loss of baggage] under federal common law." *Casas*, 304 F.3d at 521 (citing *Sam L. Majors Jewelers*, 117 F.3d at 925). In *Cases*, the Fifth Circuit Court of Appeals ruled that "[t]he ADA's savings clause, which preserves other remedies provided by law, had the effect of preserving the clearly established federal common law cause of action against air carriers for lost shipments." *Id.* (citations and quotation marks omitted).

omitted); *accord Torres v. Kalloo*, 37 V.I. 24, 29 (Terr. Ct. 1997); *Barrett*, 697 P.2d at 409. "A bailment terminates upon the surrender of possession in compliance with the bailment agreement." *Don-Lin Jewelry Co., Inc. v. The Westin Hotel Co.*, 877 A.2d 621, 624 (R.I. 2005) (citation omitted). "Where the bailment is for mutual benefit, the bailee is held to the exercise of ordinary care in relation to the property, and is responsible only for ordinary negligence."[8] Richard A. Lord, WILLISTON ON CONTRACTS § 53:11 (4th ed. 1991; *accord Nantucket Aircraft*, 54 B.R. at 88. "A bailor makes out a prima facie case of negligence by a bailee by proof of three elements: a contract of bailment; delivery to the bailee; and the failure of the bailee to redeliver the property at termination of the bailment." *Nantucket Aircraft*, 54 B.R. at 88 (citing *Inland Metals Refining Co. v. Ceres Marine Terminals*, 557 F. Supp. 344 (N.D.Ill. 1983)); *accord Houston Aviation Prods. Co. v. Gulf Ports Crating Co.*, 422 S.W.2d 844, 845 (Tex. App. 1968) ("A bailor makes out a prima facie case of negligence against a bailee by proving the bailment, delivery of the property to the bailee in good condition, and damage to the property while in the possession of the bailee." (citation and quotation marks omitted)). Importantly, bailees are "not insurers, and are only liable for negligence." *Nantucket Aircraft*, 54 B.R. at 88; *accord*, Lord, *supra* at § 53:11 ("[T]he bailee is not an insurer, and the standard of care with respect to bailed property remains the exercise of ordinary care.").

▮ In the instant case, the sparse evidence shows that Mr. Lindsey delivered the carry-on bag to Cape Air as he boarded the plane in San Juan. It is undisputed that Cape Air had exclusive possession of the bag until the plane landed on St. Croix. When Mr. Lindsey deplaned on St. Croix he was told that his carry-on duffle, "would be on the belt." (Appendix at 40.) As plaintiffs, the Lindseys had the burden of proving that Cape Air failed to deliver the bag containing the jewelry at the end of the bailment. *See Nantucket Aircraft*, 54 B.R. at 88. The Lindseys presented no evidence that Cape Air did not deliver the bag to the baggage claim carousel, and they do not claim on appeal that Cape Air failed to deliver the bag there. Thus, by all appearances, the bailment for mutual benefit terminated when Cape Air delivered the bag to the baggage claim

---

[8] In their appellate briefs, both parties acknowledge that, as a bailee of Mr. Lindsey's carry-on bag, Cape Air had a duty to exercise reasonable care in protecting the bag. (*See* Appellant's Br. 10-11; Appellees' Br. 18-19.)

area. *See Don-Lin Jewelry*, 877 A.2d at 624-25 ("The plaintiff cannot hold defendant liable for loss of the bailed property that occurred after the hotel delivered possession of the bailed property to Dillard's under the terms of the bailment.")

It is undisputed that the Lindseys, through no fault of Cape Air, failed to retrieve the carry-on bag from the place it was delivered by Cape Air at the end of the bailment. The evidence does not show how long the bag remained in that area or who might have accessed the bag and its contents while it was there. The evidence indicates that at some point somebody removed the bag from the belt and that the next morning it was located on the floor behind a counter where a woman met Mr. Lindsey. The evidence is silent as to who removed the bag from the baggage belt the night before, who had access to it during the overnight hours, who placed it behind the counter, whether the counter was an area controlled by Cape Air, and whether the woman who met Mr. Lindsey in the morning was a Cape Air representative.[9] In short, the evidence failed to establish whether the contents of the bag were missing due to Cape Air's negligence during the term of the bailment or whether the jewelry was taken from the bag by a third party once the bailment ended. Thus, the Lindseys' "claim that [Mrs. Lindsey's] jewelry was stolen while in the possession of [Cape Air] is pure speculation . . . ." *Nantucket Aircraft*, 54 B.R. at 88.

Under these circumstances, the Superior Court erred in rendering judgment in favor of the Lindseys. The Lindseys failed to present sufficient evidence to support their claim that Cape Air was negligent in handling the carry-on bag, and to hold Cape Air liable merely because the evidence showed the jewelry was missing would render the airline an insurer of the goods. And, although the Lindseys assert that Cape Air waived any argument concerning the sufficiency of the evidence because the defendant did not raise it before the Superior Court, to the extent that the procedural rules require a defendant in a bench trial to move for judgment as a matter of law, those rules are suspended in the Small Claims Division where the ultimate objective is to achieve "substantial

---

[9] We note that, had the evidence established that Cape Air retrieved the bag from the belt and stored it overnight for Mr. Lindsey's benefit, a gratuitous bailment may have been created under which Cape Air would have been liable for loss or damage caused by its gross negligence. *See* Lord, *supra* at 53:8 (recognizing that "[a] bailee who undertakes the care of goods without reward is liable for damage caused only by his or her gross negligence.")

justice between the parties according to the rules of substantial law." SUPER. CT. R. 64.

## IV. CONCLUSION

The Superior Court erred in granting judgment in favor of the Lindseys. Even though Cape Air did not establish that the liability limitations in the Contract of Carriage governed the Lindseys' claim, the Lindseys did not present any evidence that Cape Air's negligence caused their loss. In the absence of such evidence, the Superior Court's assignment of liability was based on speculation that Cape Air's negligent conduct caused the loss and rendered Cape Air an insurer of the baggage, which the law forbids. Accordingly, the Superior Court's judgment will be vacated and the court will be directed to enter judgment entered in favor of Cape Air.